Theya Kanagaratnam, living woman
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave. #16
Oakland, California [94606]
e-mail: theyak101@yahoo.com



FILED
MAY 2 0 2024
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

THEYA PRAKASHINI KANAGARATNAM

Debtor

Case No:  24-40209

Amended Motion to Setoff, Settle and
Discharge all liabilities and Balance
Account to Zero

Judge:  William J. Lafferty

_____/

Good morning your Honor,

If it would please the court, I need to clarify a few items today that the assigned Trustee has failed and refused to bring to the attention of this Court.

1, I, Theya Kanagaratnam, am the Secured Party Creditor, and Holder In Due Course and am appearing Specially and not generally on behalf of the ESTATE also known as THEYA PRAKASHINI KANAGARATNAM. I am not the Debtor for the named ESTATE.

2. I have supplied this Court with expert forensic analysis that the alleged Note was not properly securitized. Therefore, it is properly listed on the schedule as unsecured debt. I demand that the alleged Creditors and Nominees render the full GAAP accounting, CUSIP, 1099 OID, and MoneyNet Daily Transfer Log 120, which will prove that they did not loan me their own money, but I extended my credit from the minor account at 31 CFR § 363.6, as all debts are prepaid without recourse.

3. I have supplied this court with the full private administrative process served to the alleged creditors. They are in Default, In Dishonor and Estoppel in the commercial realm. They have already agreed to setoff, settle, and discharge the liabilities by Public Policy, 31 USC 5118(d)(1,2) and have also received tender of a negotiable instrument, which they have not dishonored. Therefore, the alleged debt is discharged. If they are now claiming that they did not accept it, then there is discharge in accord with UCC 3-601, 3-602, 3-603 and they are in breach of fiduciary duty in violation of UCC 3-307 and 18 USC § 2073.

4. I have supplied this court with a copy of my Naturalization Certificate A28 935 476, Birth Certificate BankNote Bond and CUSIP 09258N315 proving the instrument was securitized and monetized. As a Secured Party Creditor, the principal, profit, proceeds, interests, and rents are my property. As the Bailor, I am transferring it to this Court as the Bailee for setoff and discharge.

5. I hereby instruct the assigned Trustee to move this Court to setoff, settle, and discharge all the liabilities and balance the account to zero by Public Policy in accord with 31 USC § 5118(d)(1,2). If either the Trustee or you as the case Trustee fail or refuse to perform, I demand either the Judge, who is authorized to access my minor account, or the U.S.A.G. appear to setoff, settle, and discharge the liabilities.

By when will you send me notice that you have rendered the accounting, discharged the liabilities and balanced the account to zero on behalf of the Debtor?

I, Theya Kanagaratnam, declare under penalty of perjury under the laws of the United States of America

the foregoing is true and correct in accord with 28 USC § 1746(1).

Respectfully submitted:

Dated: May 20, 2024

By: _theya : Kanagaratnam_
Theya Kanagaratnam,
living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM
d/b/a THEYA PRAKASHINI KANAGARATNAM

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Petition of Sivagnanapragajini )

For Change of Name From )

Sivagnaanpragajini to )          CIVIL NO. _33044_

Theya Prakashini )

## ORDER OF PUBLICATION

A petition for change of name of Sivagnanapragajini, an adult resident of Montgomery County, Maryland, to Theya as her first name and Prakashini as her middle name, having been filed, it is this _13th_ day of _June_, 1988,

ORDERED by the Circuit Court for Montgomery County, Maryland, that creditors and all other interested persons are hereby notified to show cause on or before the _25th_ day of _July_, 1988, why the relief prayed such cause be shown in writing and filed by that date, the Petitioner may obtain a final decree for the relief sought.

This Order shall be published in accordance with Maryland Rule 2-122(1) by mailing and posting in lieu of publication.

FILED
JUN 13 1988

_Howard M. Smith_
Clerk

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Petition of Sivagnanapragajini ) | |
| For Change of Name From ) | |
| Sivagnanapragajini to ) | CIVIL NO. 33044 |
| Theya Prakashini ) | |

ORDER

UPON CONSIDERATION of the Petitioner's Motion For Waiver of
Publication herein, and it appering to the Court for good cause
shown that the publication herein should be waived pursuant to
Rule BH72(a) of the Maryland Rules fo Procedure;

It is this 13th day of June 1989, by the Circuit Court for
Montgomery County, Maryland,

ORDERED, that the requirement of publication for the petition·
For Change of Name be, and the same is hereby, waived, and it is
ordered that notice by posted pursuant to Rule 2-122(1) of the
Maryland Rules of Procedure.

FILED
JUN 13 1988

_William C. Mills_
judge, Circuit Court For
Montgomery County

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Petition of Sivagnanapragajini )

For Change of Name From )

Sivagnanapragajini to ) CIVIL NO: _33044_

Theya Prakashini )

### FINAL DECREE

Sivagnanapragajini, having filed a Petition in the above captioned matter, and notice by the publication having been waived in accordance with Maryland Rule BH72(a) and notice having been posted pursuant to Rule 2-122(1) and it appearing that there are good and sufficient grounds for granting the relief sought, it is this _8th_ day of _August, 1988_ that the Circuit for Montgomery County, Maryland,

ADJUGED, ORDERED, and DECREED, that the name Sivagnanapragajini be, and the same is hereby, changed to Theya as her first name and Prakashini as her middle name.

FILED
AUG 9 1988

_John J. Mitchell_
judge, Circuit Court For
Montgomery County, Maryland

APPROVED AS TO
FORM AND CONTENT

_Craig S. Rice_

Case: 24-40209   Doc# 27-3   Filed: 05/20/24   Entered: 05/20/24 10:13:32   Page 5 of 98

# EVIDENCE OF US BANK / SELENE FINANCE FORENSIC AUDIT AND ADMINISTRATIVE PROCESS

 

**FROM:**
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

**TO:**
US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFIED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4322
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CC:**
SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFIED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4339
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CC:**
MTC FINANCIAL INC. DBA TRUSTEE CORPS
c/o Rande Johnsen, CFO
17100 Gillette Ave
Irvine, CA 92614
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFIED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4346
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DATE:** February 13, 2024

**RE:   NON-NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE**

**IN REPLY TO: ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013**

```
           NOTICE TO AGENT IS NOTICE TO PRINCIPAL
           NOTICE TO PRINCIPAL IS NOTICE TO AGENT

          APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

          ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
          UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)
```

Page 1

```
                    PRESENTED IN GOOD FAITH
          UCC § 1-201(20), § 1-202, § 1-203

          FRCP Rule 36 "Request for Admission"
           18 USC § 1001 "False Statements"
                  Silence is Acquiescence
```

```
***********************************************************************
```
# CONTRACT TERMS AND CONDITIONS

Plain-simple-English & Plain-Simple-Counting-Systems [Cash Accounting].

Roberts Rules of Order apply [In plain language to aid your understanding];
Attorney and or Agents with significant control and authority


Greetings,

I hope this **NON-NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE** finds you well
and good stead.

I am contacting you because on May 24, 2013 I received your correspondence
called "NOTE" and "LOAN MODIFICATION AGREEMENT" and "DEED OF
TRUST"(Hereinafter "Offer").

As you likely know, one of the foundational principles of contract is
"certainty of terms". Therefore, before I can accept your Offer, I need
clarification of terms, please.

I would like to settle the matter as soon as possible, please. Therefore,
I am sending you the questions below.

Please answer the questions below relating to your Offer and return the
answers to me by mail within **Fourteen (14) Days** from the date of this NON-
NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE.

If you need more time, or if you need any question restated, please make
your request to me in writing at the address provided above.

**Examination statement:** In my Private and Public duties, I have examined
your Offer.

In your Offer I have found errors (See Below FORENSIC EVIDENCE ANALYSIS):
please stop and correct the errors to avoid possible mail fraud, possible
fictitious use of language, pertaining to the fraud act **(18 USC § 1001)**.
**(See Exhibit B)**

I am requesting you mail me a corrected Offer in a language I can comprehend.
(See Below **SYNTAX ANALYSIS GUIDE**).

For me to safeguard you from **Jeopardy** please respond accordingly to these
following questions:

1. Please confirm that you agree that this Notice is being presented to
   you in accordance with FRCP Rule 36 – Request for Admission: Sign
   here:_____ [Default answer: Yes]

2. Please respond, point-for-point, to any previously supplied Notices
   and forensic analysis and attach your response to this Notice.
   {Default answer: Agree that the Notices are true, correct, and not
   misleading}

3. Are you aware that federal law provides for imprisonment and/or
   fines for making any materially false, fictitious, or fraudulent

statement or representation whether in person, in writing or via mail? YES OR NO. Please give your answer here: _____ [Default answer: Yes]

4. Provide Evidence and Proof that the Offer does not make false, fictitious, fraudulent, and misleading statements thus possibly violating; **15 USC § 1692e(2A)** and/or **18 USC § 1001**. (Please see **Exhibit A**) Please give your answer here:
_____

5. Is the Offer an attempt to contract with me, in personam, or the legal fiction, nom de guerre/idem sonans? Please give your answer here: _____ [Default answer: Non de guerre/idem sonans]

6. Regarding the Offer, which dictionary and styles manual are you using? Please give your answer here:
_____

7. Which language are you using on your Offer? Please give your answer here: _____

8. Provide evidence and proof that in sending the Offer via the United States Postal Service does not constitute a mailing of a fraudulent claim and/or committing mail fraud.
Attach your evidence to this contract.

9. Provide evidence and proof that my reply via the United States Postal Service does not bring you under the rules, regulations, and guidelines of the Universal Postal Union. **See Presentment Post Manual, Edition by J. Campbell, 2014/2015**. Attach your evidence to this contract.

10. Do you have a UCC-1 lien on the Note or the property? Yes or No: _____ [Default Answer: No]

If yes, what is the filing number for the UCC-1: _____

11. What is the name and type of the account as the source of the credit for the loan? What bond was the source of the future-labor-interest deposit for the book entry credit for the account? Is there a CUSIP behind the bond that funded this account? If yes, what is the CUSIP? **See 31 CFR § 363.6**. Attach your evidence of the bank's transaction(s) for this contract.
_____
_____

[Default answer: Minor account]

12. If you extended my credit in exchange for Federal Reserve notes, please attach a copy of the MoneyNet Daily Transaction Log for the transaction as the cash receipt. Please attach the log with your response.

13. Is there one or more REMICs, Tranche's and/or CDO's behind the Note? If yes, who is/are the Trustees and/or the Nominees. What is/are the CUSIPs? Is the Trustee/Nominee required to follow IRS Publication 1212, 938, and 550? If yes, please provide the IRS 1099

OID. Did you file the IRS 1099 A? If yes, did you send me a Notice that I abandoned the deposit of my property or did you assume that I abandoned the property and you embezzled the money due to me as a return to source?

_____

_____

14.     If you answered no to the question above, was this a hard-money-loan? In other words, did you lend your own money? Yes or No? _____ [Default answer: No]

15.     Did you disclose only the accounts receivable accounting and not the accounts payable/liabilities-side of the ledger? If yes, please provide the full accrual GAAP accounting and adjust the account. Did the property get moved to the off-balance sheet liabilities ledger? If yes please provide that GAAP accounting and answer the following question. Am I the creditor, beneficiary, equity title owner, and original owner, on the off-balance sheet liabilities ledger and due an offset for the accounting? If yes, please attach your accounting and provide the refund amount due. See UCC § 9-210.

_____

[Default answer: Yes]

16.     Did you supply me with the required 1099 OID in accordance with IRS Publications 1212, 938, and 550? Yes or No: _____ [Default answer: No]

17.     Did you file the IRS 1099 A, and embezzle the money due to me as a return to source, and then failed to send a Notice to me that I allegedly abandoned the deposit? Yes or No: _____ [Default answer: Yes]

18.     If yes, please attach a refund check with your response.

19.     Produce the original Note and/or a certified copy of the front and back from the Holder of the Note and attach it with your response.

20.     Do you intend to refuse to accept tender of a promissory note or bond as an obligation of the United States? Yes or No: _____ [Default Answer: Yes].

21.     Please confirm that you agree that refusal of tender is discharge to the extent of the amount of the tender UCC § 3-603(b). Sign here: _____ {Default answer: Yes}

22.     Who is the Real Party in Interest? _____

**It is not my intention, nor has it ever been my intention to avoid paying any debt that I lawfully owe.** In the Offer there is mention of required payment which I would like to settle IMMEDIATELY. What specie will you accept or lawfully require as payment? *Please see **18 USC § 8 and then 31 USC § 3124** and **Article 1 Section 10** United States Constitution (see **EXHIBIT A**).* Please provide your answer here: _____

I want to get this matter resolved lawfully as soon as possible. I will grant

you **Fourteen (14) days** from the date of this NON-NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE for your response on a point-by-point basis.

**HOWEVER, BY YOUR FAILURE TO REPLY OR PROVIDE A RESPONSE POINT-FOR-POINT,** according to the terms above, within the stated timeline, it will be presumed that you have accepted the Terms and Conditions as stated herein.

Specifically, you will be deemed to have agreed to the following: That I am the **creditor** and you are the debtor.

Specifically, you will be deemed to have agreed to the following: that no further payment is owed, that the outstanding debt has been discharged in full thereby reducing the account balance to $0 zero. That you will remove negative credit reporting you have reported to the crediting agencies. That you will mail me a reconveyance and/or lien release. That you are accepting this NOTICE as a full accord and satisfaction.

Specifically, you will be deemed to have agreed to the following: that on my authorization herein, as the Grantor/Settlor, Depositor, Bailor, Beneficiary, and Secured Party of the minor account, you agree to be assigned as the Attorney In Fact, to contact any agency and instruct them to transfer the funds from my account to setoff and settle the entire balance due. That you will send me all the accounting and documents for the transfer process and the name and contact information of the Agent that completed the transfer.

Specifically, you will be deemed to have agreed to the following: that you shall transfer and convey the Note [not the property] to the United States Treasury Department, in accordance with 31 USC § 3113, to be used to redeem the Note and reduce the national debt on the condition that the obligation be cancelled and retired and not reissued by another "pull" from the minor account to settle the balance due. Then release the lien and return the property to me.

Specifically, you will be deemed to have agreed to the following: that you shall remove any acting Trustee or Nominee for nonfeasance. That you shall assign either me or an agent of my choice as the Trustee as the Attorney In Fact, with full power and authority to instruct any agent, trustee, partner, corporate officer or director, or other representative, owing a fiduciary duty with respect to the instrument to pay and perform. See UCC § 3-307.

Specifically, you will be deemed to have agreed to the following: that if you file any petition for court or arbitration, that it will be equity practices to perform the accounting only. That the equity court/arbitration shall issue an immediate Summary Judgement and Default Judgement against you and issue a punitive award of triple damages for failing or refusing to pay or perform as you are in Dishonor in Default and are estopped. That no BAR actor may represent you because they are not licensed by the State to practice law. In addition, that I, as the Interpleader under Dispute of Ownership of Funds, may petition the court that the 100% of the CUSIP Court Registry funds belong to me.

Specifically, you will be deemed to have agreed to the following: that I may file a UCC-1 lien on the Note and the property as the collateral. That I am the source of the credit used to extend the credit. That you have no right to file a UCC-1 lien as you did not extend your own credit or money. That the UCC-1 lien stands superior to any equitable lien that you allege to have on the Note or the property. That you waive all defences and claims that the

lien is bogus or frivolous.

Specifically, you will be deemed to have agreed to the following: that you shall accept payment in the form of either a promissory note and/or a bond, for full satisfaction and discharge of the loan to settle the account and close this commercial matter. That refusal of tender or dishonor of the note or bond is discharge to the extent of the amount of the tender and that no further payment is owed. That the outstanding debt has been discharged in full thereby reducing the account balance to $0 zero. That you owe a refund for the tender if made in an amount over the account balance. That you will remove negative credit reporting you have reported to the credit agencies. That you will mail me a conveyance or lien release, the Deed, and the Title. That you are accepting this NOTICE as a full accord and satisfaction.

Specifically, you will be deemed to have agreed to the following: that you agree to accept and pay the Bill in Equity, which is due upon receipt (7 days grace period for return mail), and will be mailed to you monthly, until such time that the balance due is satisfied. That any late or unpaid balance will include a non-settlement penalty of $100, plus 24% compounding interest [2% per month]. That I reserve all rights in law and equity to collect on the amount due, including, but not limited to; a court action, transferring/conveying/selling the Bill In Equity to a debt collection agency, and/or sending you an IRS 1099 C – Cancellation of Debt.

Specifically, you will be deemed to have agreed to the following: that any court appearance by me will be by Special Appearance only, and not generally. That I have reserved all my rights without prejudice and without recourse. That I am the Trustee, Principal Owner, Secured Party Creditor, and Real Party In Interest, in relation to my estate. That by my Special Appearance, I am not there to argue the law, the facts, the jurisdiction, or the venue. That by my Special Appearance the only subject matter before the court will be to adjust the account, setoff, settle, and discharge the liabilities and close the account.

Specifically, you will be deemed to have agreed to the following: that if you file any court action in regard the subject matter that I may send Notice to the court to immediately rule on the matter, prior to my Special Appearance, and to issue an Order that the claim was already settled, and issue a Summary Judgement, based on your failure to either pay and/or perform and/or your failure/refusal to provide the court with the Notices served to you, by the evidence I submit to the court. That I may Notice the court to issue a Default Judgement and request an award of damages in accordance with the Bill in Equity submitted to the court. That I may file a UCC-1 lien against your bank accounts and property and you waive all defences and claims that said lien is bogus or frivolous. That I may immediately file a Writ of Execution against your bank account(s). That I may immediately perform a Real Property Levy Writ of Sale to sell your property to satisfy the judgement lien.

Specifically, you will be deemed to have agreed to the following: that you shall provide the IRS 1099 OID in accordance with IRS Publication 1212, 938, and 550. That if you filed the IRS 1099 A you agree to provide a full refund on the grounds that you never sent me Notice that I abandoned the property. That if you fail or refuse to provide the 1099 OID or a refund, that I may file a tort claim against you. That the equity court shall issue an immediate Summary Judgement and Default Judgement against you. That by the court order I may immediately file a UCC-1 lien against your bank accounts and property and you agree to waive all defences and claims that the UCC-1 lien is bogus

or frivolous. That I may immediately file a Writ of Execution against your bank account(s). That I may immediately perform a Real Property Levy Writ of Sale to sell your property to satisfy the judgement lien.

Specifically, you will be deemed to have agreed to the following: that you will file the appropriate Land Patent documents with the County Recorder and/or the Secretary of the Interior and pay to remove any liens or encumbrances that make me an obligor to pay property taxes. That you agree to file the Quit Claim Deed or Warranty Deed to transfer the Property to the Irrevocable Trust.

Specifically, you will be deemed to have agreed to the following: that you agree that for any attempt by you or your agent to foreclose on the property located at 2316 Lakeshore Ave, Apt 16, Oakland, California 94606. (Hereafter referred to as the "Property") you agree to pay my fee of $100,000.00 per response to you, and any attempt, notice, or presentment, made by you or your agent. That in the event of successful foreclosure by you or your agent, that you will pay me punitive damages in the form of triple damages for the market value of the Property, plus $10,000.00 per day, plus all court and attorney's costs and fees until the Property is returned to me. That you agree to waive all jurisdiction and appeals. That I may immediately file a Tort claim against you in the U.S. Court of Federal Claims or the U.S. Court of International Trade as well as to file criminal charges against you with the F.B.I and the United States Attorney General for violating 15 USC § 1; Trusts in restraint of trade illegal, 15 USC § 2 "Monopolizing trade a felony", and 18 USC § 371 Conspiracy to commit offense or to defraud United States, 28 USC 2041 "Deposit of moneys in pending or adjudicated cases", 18 USC 2073 "False entries and reports of moneys or securities" for continuing the case after discharge.

Specifically, you will be deemed to have agreed to the following: that you shall not place me on E-Check or TeleCheck, or any other private reporting systems. If you do, you agree to pay me $10,000.00 per day until you provide certified proof of the records being deleted and Notice of rescission and deletion to every Person who you have sent Notice to or who has accessed said records.

Specifically, you will be deemed to have agreed to the following: that you agree that for any attempt by you or your agent to foreclose on the property that I may file an ex relatione criminal complaint on behalf of the UNITED STATES and the UNITED STATES DEPARTMENT OF THE TREASURY against the Service Provider's CFO, the Bank's CFO, the (REMIC) Trustee, and all BAR counsel. That the court CUSIP bond funds belong to me as the Interpleader. That said ex relatione criminal complaint is not bogus or frivolous as you are in breach of fiduciary duty UCC § 3-307, have refused tender UCC § 3-603(b) and agreed to discharge the full amount, and are in violation of 15 USC § 1; Trusts in restraint of trade illegal, 15 USC § 2 "Monopolizing trade a felony", and 18 USC § 371 Conspiracy to commit offense or to defraud United States, 28 USC 2041 "Deposit of moneys in pending or adjudicated cases", 18 USC 2073 "False entries and reports of moneys or securities" for continuing the case after discharge.

Sincerely,

Date: 02/13/2024

By: _Theya K._  Theya Kangaratnam, a living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANGARATNAM

Page 9

**18 U.S. Code § 8 - Obligation or other security of the United States defined**
The term "**obligation** or other security of the United States" <u>includes all bonds</u>, certificates of indebtedness, <u>national bank currency</u>, <u>Federal Reserve notes</u>, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and <u>cancelled United States stamps</u>.
(June 25, 1948, ch. 645, 62 Stat. 685.)

**National Bank Currency = Promissory Notes.**

Guarantee Trust of New York v Hendwood, 59 S. Ct. 847 (1933), 307 US 847 (1939), [Footnote 1, 3] 384, 485 holds that 31 USC 5118 was enacted to remedy the specific evil of tying debt to any particular currency or requiring repayments in a greater number of dollars that promised. Since October 27, 1977 "there can be no requirement of repayment in legal tender either since legal tender was not loaned and repayment need only be made in equivalent kind: A negotiable instrument representing credit, i.e. an International Bill of Exchange." Or as otherwise stated; **NO ONE TODAY CAN MAKE DEMAND IN PAYMENT IN ANY SPECIFC COIN OR CURRENCY!**

I **OBJECT** to the demand to pay only in Federal Reserve notes. See **MacLoed v Hoover, 159 La. 244 (1925);** "*Federal Reserve Bank notes good for money, unless specifically objected to.*" See also 34 Am. Jur. 2d § 60518, 38 Am. Jur. 2d Gifts § 87 and the MoneyNet Daily Transaction Log, for the credit pulled from my minor account, 31 CFR § 363.6, for the conversion to Federal Reserve notes. <u>Produce the Log and the IRS 1099 OID.</u>

Proof of bankruptcy by the use of fiat currency - <u>there is no money</u>! See <u>UCC § 1-201(24) definition of "money" and the Affidavit of Walker Todd, Federal Reserve Bank of New York and Cleveland.</u>

> (24) **"Money"** means a medium of exchange currently authorized or adopted by a domestic or foreign government. The <u>term</u> includes a monetary unit of account established by an intergovernmental <u>organization</u> or by <u>agreement</u> between two or more countries.



Demand Note, "Redeemable in Lawful Money at the United States Treasury Department or at Any Federal Reserve Bank"



Federal Reserve Notes, Legal Tender: Backed only by the "Full Faith and Credit" of the United States [14th Amendment U.S. citizen's Birth Certificate BankNote Bond, minor account at 31 CFR § 363.6, book entry credit]


California Certificate of Live Birth: "Midwest Bank Note Company"


Texas Certificate of Live Birth: "BankNote Corporation of America"

31 U.S. Code § 3124 - Exemption from taxation

(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

(1) a non-discriminatory franchise tax or another non-property tax instead of a franchise tax, imposed on a corporation; and

(2) an estate or inheritance tax.

(b) The tax status of interest on obligations and dividends, earnings, or other income from evidences of ownership issued by the Government or an agency and the tax treatment of gain and loss from the disposition of those obligations and evidences of ownership is decided under the Internal Revenue

Code of 1986 (26 U.S.C. 1 et seq.).

An obligation that the Federal Housing Administration had agreed, under a contract made before March 1, 1941, to issue at a future date, **has the tax exemption** privileges provided by the authorizing law at the time of the contract. This subsection does not apply to obligations and evidences of ownership issued by the District of Columbia, a territory or possession of the United States, or a department, agency, instrumentality, or political subdivision of the District, territory, or possession.
(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 945; Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095.)

**Article 1 Section 10 United States Constitution**
<u>**No State shall**</u> enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; <u>**make anything but gold and silver Coin a Tender in Payment of Debts**</u>; pass any Bill of <u>**Attainder**</u>, ex post facto Law, <u>**or Law impairing the Obligation of Contracts**</u>, or grant any Title of Nobility. No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's [sic] inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress. No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

**31 CFR § 363.6 Minor and Minor Account**
<u>*Minor*</u> means an individual under the age of 18 years. The term minor is also used to refer to an individual who has attained the age of 18 years but has not yet taken control of the securities contained in his or her minor account.

<u>*Minor account*</u> means an account that a custodian controls on behalf of a minor, that is linked to the custodian's primary account. (See §§ 363.10 and 363.27 for more information about minor accounts.)

**UCC § 3-305 Defenses and Claims in Recoupment**
(a) Except as otherwise provided in this section, the right to enforce the obligation of a <u>party</u> to pay an <u>instrument</u> is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the <u>instrument</u> with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2) a defense of the obligor stated in another section of this Article or a defense of the obligor that would be available if the <u>person entitled to enforce</u> the <u>instrument</u> were enforcing a right to payment under a simple contract; and

(3) a claim in recoupment of the obligor against the original payee
of the instrument if the claim arose from the transaction that gave
rise to the instrument; but the claim of the obligor may be asserted
against a transferee of the instrument only to reduce the amount
owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of
a party to pay the instrument is subject to defenses of the obligor
stated in subsection (a)(1), but is not subject to defenses of the
obligor stated in subsection (a)(2) or claims in recoupment stated in
subsection (a)(3) against a person other than the holder.

(c) Except as stated in subsection (d), in an action to enforce the
obligation of a party to pay the instrument, the obligor may not
assert against the person entitled to enforce the instrument a
defense, claim in recoupment, or claim to the instrument (Section 3-
306) of another person, but the other person's claim to the instrument
may be asserted by the obligor if the other person is joined in the
action and personally asserts the claim against the person entitled to
enforce the instrument. An obligor is not obliged to pay the
instrument if the person seeking enforcement of the instrument does
not have rights of a holder in due course and the obligor proves that
the instrument is a lost or stolen instrument.

(d) In an action to enforce the obligation of an
accommodation party to pay an instrument, the accommodation party may
assert against the person entitled to enforce the instrument any
defense or claim in recoupment under subsection (a) that the
accommodated party could assert against the person entitled to enforce
the instrument, except the defenses of discharge in insolvency
proceedings, infancy, and lack of legal capacity.

(e) In a consumer transaction, if law other than this article requires
that an instrument include a statement to the effect that the rights
of a holder or transferee are subject to a claim or defense that the
issuer could assert against the original payee, and the instrument
does not include such a statement: (1) the instrument has the same
effect as if the instrument included such a statement; (2) the issuer
may assert against the holder or transferee all claims and defenses
that would have been available if the instrument included such a
statement; and (3) the extent to which claims may be asserted against
the holder or transferee is determined as if the instrument included
such a statement.

(f) This section is subject to law other than this article that
establishes a different rule for consumer transactions.


## 12 USC & 266 State-chartered banks and other institutions as depositories of public money fiscal agents; duties

Banks, savings banks, and savings and loan, building and loan, homestead
associations (including cooperative banks), and credit unions created under
the laws of any State and the deposits or accounts of which are insured by a
State or agency thereof or corporation chartered pursuant to the laws of any
State may be depositaries of public money and may be employed as fiscal
agents of the United States. The Secretary of the Treasury is authorized to
deposit public money in any such institution, and shall prescribe such
regulations as may be necessary to enable such institutions to become
depositaries of public money and fiscal agents of the United States. Each

such institution shall perform all such reasonable duties as depositary of public money and fiscal agent of the United States as may be required of it including services in connection with the collection of taxes and other obligations owed the United States.

(Pub. L. 95-147, §2(d), Oct. 28, 1977, 91 Stat. 1228.)


## UCC § 3-311. ACCORD AND SATISFACTION BY USE OF INSTRUMENT.

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.

(2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that that sent a statement complying with paragraph (1)(i).

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.


## UCC § 3-601. DISCHARGE AND EFFECT OF DISCHARGE.

(a) The obligation of a party to pay the instrument is discharged as stated in this Article or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract.

(b) Discharge of the obligation of a party is not effective against a person acquiring rights of a holder in due course of the instrument without notice of the discharge.

**I HAVE ACCEPTED YOUR INSTRUMENTS. THEREFORE, I AM NOW THE HOLDER IN DUE COURSE.**

UCC § 3-602. PAYMENT.

(a) Subject to subsection (b), an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3-306 by another person.

(b) Subject to subsection (e) a note is paid to the extent payment is made by or on behalf of a party obliged to pay the note to a person that formerly was entitled to enforce the note only if at the time of the payment the party obliged to pay has not received adequate notification that the note has been transferred and that payment is to be made to the transferee. A notification is adequate only if it is signed by the transferor or the transferee; reasonably identifies the transferred note; and provides an address at which payments subsequently can be made. Upon request, a transferee shall seasonably furnish reasonable proof that the note has been transferred. Unless the transferee complies with the request, a payment to the person that formerly was entitled to enforce the note is effective for purposes of subsection (c) even if the party obliged to pay the note has received a notification under this paragraph.

(c) Subject to subsection (e), to the extent of a payment under subsections (a) and (b), the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3-306 by another person.

(d) Subject to subsection (e), a transferee, or any party that has acquired rights in the instrument directly or indirectly from a transferee, including any such party that has rights as a holder in due course, is deemed to have notice of any payment that is made under subsection (b) after the date that the note is transferred to the transferee but before the party obliged to pay the note receives adequate notification of the transfer.

(e) The obligation of a party to pay the instrument is not discharged under subsections (a) through (d) if:

(1) a claim to the instrument under Section 3-306 is enforceable against the party receiving payment and (i) payment is made with knowledge by the payor that payment is prohibited by injunction or similar process of a court of competent jurisdiction, or (ii) in the case of an instrument other than a cashier's check, teller's check, or certified check, the party making payment accepted, from the person having a claim to the instrument, indemnity against loss resulting from refusal to pay the person entitled to enforce the instrument; or

(2) the person making payment knows that the instrument is a stolen instrument and pays a person it knows is in wrongful possession of the instrument.

(f) As used in this section, "signed," with respect to a record that is not a writing, includes the attachment to or logical association with the record of an electronic symbol, sound, or process to or with the record with the present intent to adopt or accept the record.

## UCC § 3-603. TENDER OF PAYMENT.

(a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

## DOES UCC § 3-307 APPLY IF YOU REFUSE TO PROCESS THE NOTE/BOND FOR FULL SATISFACTION AND TO SETTLE THE ACCOUNT?

## UCC § 3-307. NOTICE OF BREACH OF FIDUCIARY DUTY.

(a) In this section:

(1) **"Fiduciary"** means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2) **"Represented person"** means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(1) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

(3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

(4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

## FAILURE TO PERFORM WOULD CONSTITUTE RESTRAINT OF TRADE, WHICH IS COVERED BY:

### 15 USC § 1 Trusts, etc., in restraint of trade illegal; penalty

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

(July 2, 1890, ch. 647, §1, 26 Stat. 209; Aug. 17, 1937, ch. 690, title VIII, 50 Stat. 693; July 7, 1955, ch. 281, 69 Stat. 282; Pub. L. 93–528, §3, Dec. 21, 1974, 88 Stat. 1708; Pub. L. 94–145, §2, Dec. 12, 1975, 89 Stat. 801; Pub. L. 101–588, §4(a), Nov. 16, 1990, 104 Stat. 2880; Pub. L. 108–237, title II, §215(a), June 22, 2004, 118 Stat. 668.)

### 18 USC § 371 Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

(June 25, 1948, ch. 645, 62 Stat. 701; Pub. L. 103–322, title XXXIII, §330016(1)(L), Sept. 13, 1994, 108 Stat. 2147.)

## TAKE EQUITABLE NOTICE: Restraint of Trade claims are filed at the U.S. Court of Federal Claims or the U.S. Court of International Trade for restraint of trade.

```
****************************************************************
```
**26 USC § 7701(a)(1, 30) : Person Defined**

(1) PERSON
The term "person" shall be construed to mean and include an **individual**, a trust, estate, partnership, association, company or corporation.

**TAKE NOTICE:** I am not an "INDIVIDUAL". That is a grantor trust, with the USAG as the common law trustee, 50 USC § 4312, and legal title owner of the estate. I am Holder-In-Due-Course, holding both legal and equity title in relation to my estate. The Agency has been terminated.

(30) UNITED STATES PERSON The term "United States person" means—
(A)
a citizen or resident of the United States,
(B)
a domestic partnership,
(C)
a domestic corporation,
(D)
any estate (other than a foreign estate, within the meaning of paragraph (31)), and
(E) any trust if—
(i)
a court within the United States is able to exercise primary supervision over the administration of the trust, and
(ii)
one or more United States persons have the authority to control all substantial decisions of the trust.

**EXHIBIT B**

**18 U.S. Code § 1001. Statements or entries generally (False & Fictitious Statements)**
Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

**15 USC § 1692e(2A)**
**(2)** The false representation of—
**(A)**
the character, amount, or legal status of any debt

## FORENSIC EVIDENCE ANALYSIS

See attached documents referenced herein. This FORENSIC EVIDENCE ANLYSIS is to help keep me and you from possibly entering into a business contract that could cause either of us to violate 18 USC § 1001; it is also for the Voidance of Perjury, or any misunderstanding by getting clarification on words, meanings, terms, grammar, syntax, sentence structure, order of operations, etc. PRIOR to entering into a contract to do business together. This FORENSIC EVIDENCE ANALYSIS is not to be interpreted as acceptance of your presentment. It is designed to get clarification PRIOR to us entering into any contract to do business together.

**IN RE: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013**



# SYNTAX AND FORENSIC ANALYSIS GUIDE

## [:Syntax analysis guide to attached documents- for [co]rrection:]



FLAG OF THE CORRECT-SENTENCE-STRUCTURE-COMMUNICATIONS-PARSE-SYNTAX-GRAMMAR
WITH THE CONTRACTING-PERSONS OF A CONTRACTUAL-POSTAL-COPORATION

Oakland, California [94606]

In your reply, For the voidance of perjury, use Correct Sentence Structure
Communications, Parse, Syntax, Grammar.

This FORENSIC EVIDENCE ANALYSIS is to help keep me and you from possibly
entering into a business contract that could cause either of us to violate 18
USC § 1001; it is also for the Voidance of Perjury, or any misunderstanding
by getting clarification on words, meanings, terms, grammar, syntax, sentence
structure, order of operations, etc. PRIOR to us entering into a contract to
do business together. This FORENCIS EVIDENCE ANALYSIS is not to be
interpreted as acceptance of your presentment/offer. It is designed to get
clarification PRIOR to us entering into any contract to do business together.

0.    conjunction
1.    adverb
2.    verb (by modification)
3.    adjective
4.    pronoun
5.    (pre)position
6.    article
7.    noun
8.    past time
9.    future time
For the claim of use quantum languages and violations by re-spondent:
law violations are with this claim:

**Symbol use with the correction.**
= a negative prefix (underlined section of a word) = NO = no contract.
**ND** = non-defined terms = non defined symbol = no contract.
**NDG** = a Nom De Guerre - fiction name, not correct full name, dead fiction.
// = **B** = Boxing = removed from page section = no contract.
**VC** = void continuum = double space/blank space area = No contract

## POTENTIAL ADDITIONAL USC LAW VIOLATIONS

**Law**
FRCP 36:      Request for Admission
FRCP 26-E:    Closure
FRCP 9-B:     Fraud by confession
Title 42:    USCS 1986:        Knowledge and Stop-Correct-Wrongs.
Title 18:    USCS § 1001 & 1002: false-statements
Title 15:    USCS § 1692E:     Fraud & Misleading Statements
Title 15:    USCS § 78 ~ ff:   Penalty: $25,000,000
Title 42:    USCS § 1985-1:    Conspiracy-Civil,
Title 42:    USCS § 1985-2:    Obstruction-evidence & Witness,

```
Title 42:   USCS § 1985-3:   Depriving Evidence & Witness,
Title 18:   USCS § 1961:     RICO
Title 18:   USCS § 242:      Coloring of the Laws = Ailing
Title 18:   USCS § 241:      Criminal-Conspiracy = tort
Title 18:   USCS § 3:        Criminal-Participation-Knowledge
Title 42:   USCS § 1983:     Personal Damages
Title 18:   USCS § 1512:     Obstruction of the Law
Title 18:   USCS § 1341:     Mail Fraud, Frauds and swindles
Title 18:   USCS § 1342:     Fictitious name or address
Title 18:   USCS § 241:      Conspiracy
Title 18:   USCS § 242:      Criminal Deprivation of Rights
Title 28:   USCS § 1359:     Loss of Jurisdiction by Collusion
Title 15:   USCS § 1:        Trusts in restraint of trade illegal
Title 15:   USCS § 2:        Monopolizing trade illegal
Title 18:   USCS § 371:      Conspiracy to commit offense or defraud United
                             States
```

# NOTE

May 24, 2013          Oakland          CA
[Date]          [City]          [State]

2316 Lakeshore Ave Apt 16
Oakland, CA 94606
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $304,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.990%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2013. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2043, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 6577, Carol Stream, IL 60197

or at a different place if required by the Note Holder

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,450.55.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
2626734805

Form 3200 1/01
VMP5N (0400) 00
Page 1 of 3

Initials: TK

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (0805).02
Page 2 of 3

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Theya Khenagaratnam_ 05/24/2013 (Seal)
Theya Kshagaratnam                -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

                                                                    [Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01
VMP5N (0902).02
Page 3 of 3
VMP ®
Wolters Kluwer Financial Services
Initials: _____

Recording Requested By:
SELENE FINANCE LP, as attorney in
fact for U.S. Bank Trust National
Association, not in its individual
capacity but solely as owner trustee for
RCF 2 Acquisition Trust c/o U.S. Bank
Trust National Association
And When Recorded Mail To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA 92602

FOR YOUR RECORDS

*[Space Above This Line For Recording Data]*

Loan No.: 2005026956
MIN: 100039033123590196

35857
Investor Loan No: 2117913

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 13th day of September, 2022, between THEYA KANAGARATNAM, A SINGLE WOMAN ("Borrower"), SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated May 24, 2013 and in the amount of $304,200.00 and recorded on June 19, 2013 in Book, Volume, or Liber No. _____, at Page _____ (or as Instrument No. 2013215140), of the Official (Name of Records) Records of ALAMEDA,CALIFORNIA (County and State, or other Jurisdiction) and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606
[Property Address]

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

MERS Phone: 1-888-679-6377
Loan Modification Agreement– Single Family – Fannie Mae Uniform Instrument       MERS Modified Form 3179 1/01 (Rev. 5/14)
The Compliance Source, Inc.                                    Page 1 of 7   Modified for California 33703CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **October 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$289,820.29**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.990%**, from October 1, 2022. Borrower promises to make monthly payments of principal and interest of U.S. **$1,209.47**, beginning on the 1st day of **November, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.990% will remain in effect until principal and interest are paid in full. If on **October 1, 2062** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including; and

   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as these referred to in (a) above.

5. Borrower understands and agrees that:

   a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.
MERS Modified Form 3179 1/01 (Rev. 4/14)
Page 2 of 7  Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.



b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐

g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the (Beneficiary) of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.

MERS Modified Form 3179 1/01 (Rev. 4/14)
Page 3 of 7 Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

*Theya Kanag*

Date: 10 / 06 / 2022

Borrower    - THEYA KANAGARATNAM

VDG

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of C A                    §
County of Alameda               §
                                §

On 10/6/22 before me Julian Walls , Notary Public personally appeared THEYA KANAGARATNAM who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JULIAN WALLS
Notary Public - California
Contra Costa County
Commission # 2377467
My Comm. Expires Oct 5, 2025

Notary Public
Julian Walls
Printed Name

(Seal)

My Commission Expires: 10/5/25

MERS Phone: 1-888-679-6377
Loan Modification Agreement--Single Family--Fannie Mae Uniform Instrument
The Compliance Source, Inc.

MERS Modified Form 3179 1/01 (Rev. 4/14)
Page 4 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev 04/21
©2008-2021, The Compliance Source, Inc.

*║ 2 0 0 5 0 2 6 9 5 6 ║*

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association

By: _____  -Lender    OCT 11 2022
Tonya Higginbotham                         Date of Lender's Signature
Assistant Vice President

ACKNOWLEDGMENT

State of ___ Florida__                §
                                      §
County of __ Duval__                  §

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this  President ___ OCT 11 2022 _____ by _____ Tonya Higginbotham of SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, a Delaware limited partnership, on behalf of the limited partnership. He/she is personally known to me or who has produced _____ as identification.

_____
Signature of Person Taking Acknowledgment
Margo A Wise

Name Typed, Printed or Stamped
Notary
Title or Rank

Notary Public State of Florida
Margo A Wise
My Commission GG 384376
Expires 08/08/2023

Serial Number, if any:

(Seal)                    My Commission Expires: _____



*charge for*
*encumbrance*
*for taxes?*

## EXHIBIT A

BORROWER(S): THEYA KANAGARATNAM, A SINGLE WOMAN

*TNAG*

LOAN NUMBER: 2005026956

LEGAL DESCRIPTION:

STATE OF CALIFORNIA, COUNTY OF ALAMEDA, AND DESCRIBED AS FOLLOWS:

TAX ID NUMBER(S): 023-0415-036  LAND SITUATED IN THE CITY OF OAKLAND IN THE COUNTY OF ALAMEDA IN THE STATE OF CA  PARCEL ONE:  AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS. EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.  ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.  PARCEL TWO:  UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  PARCEL THREE:  AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  PARCEL FOUR:  AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  COMMONLY KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606

Parcel ID Number: 023-0415-036-00
ALSO KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606

*# State the remedy for the Lend Patent*

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument          MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.                    Page 7 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/23
©2005-2021, The Compliance Source, Inc.

Recording Requested By:
See "Return To:" name

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

*(handwritten notes in right margin)* where is the cust.?

*(stamp)* 18 U.S. 2703(17):
Substitution of legible original
I declare under penalty of perjury
that this handwritten or typewritten
legible copy is a true copy of the
original page(s).
Ca    6/17/13

Prepared By:
Sara Davis

*(handwritten note)* "color of Law/Deed"
where is the Land Patent?

57870875

─────────────────[Space Above This Line For Recording Data]─────────────────

3312359019

# DEED OF TRUST

MIN 100039033123590196

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    May 24, 2013
together with all Riders to this document.
(B) "Borrower" is Theya Kanagaratnam, a single woman

*(handwritten note)* NoG
*(handwritten note)* Presentment? Acceptance?

Borrower's address is 2316 Lakeshore Ave Apt 16 , Oakland, CA 94606
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is Quicken Loans Inc., NML 5357

Lender is a                                   Corporation
organized and existing under the laws of        the State of Michigan

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01
2626734890
Wolters Kluwer Financial Services
VMP ®-6A(CA) (0711)
Page 1 of 15        Initials: _____

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
q03312359019 0233 240 0115

Lender's address is 1050 Woodward Ave, Detroit, MI 48226-1906

(D) "Trustee"is TSI Title Company of California, Inc.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated        May 24, 2013
The Note states that Borrower owes Lender Three Hundred Four Thousand Two
Hundred and 00/100                                                      Dollars
(U.S. $ 304,200.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        June 1, 2043

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | Second Home Rider |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ VA Rider | ☐ Biweekly Payment Rider | Legal Attached Exhibit A |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

q03312359019 0233 249 0225
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005 1/01
VMP ®-6A(CA) (0511)                          Page 2 of 15        Initials: JK

*(handwritten left margin)* TILA  
Regulation Z ?  
UCC

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of Alameda

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

*(handwritten right margin)* Fraud / Remedy to remove for nonfeasance, misfeasance or malfeasance

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number: 023-0415-036      which currently has the address of

2316 Lakeshore Ave Apt. 16      [Street]

Oakland      [City], California 94606   [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*(handwritten right margin)* who has equitable title?

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01  
VMP ®-6A(CA) (0511)      Page 3 of 15      Initials: JS

*(handwritten)* NP4

203312359019 0233 249 0315

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

603312359019 0253 249 0415

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ® -6A(CA) (0511)                                        Page 3 of 15           Initials: TK

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

||||||||||||||||||||||||||||||||||||||||
q03312359019 0233 249 0513

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0711)                                    Page 5 of 15          Initials: _TK_

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

003123559019 0233 249 0615

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®-6A(CA) (0213)
Page 5 of 15
Initials _TK_

Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30 day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

003123356919  0253  349  0713
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
VMP ®-6A(CA) (0711)                          Page 7 of 16               Initials: TK

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

q03312359019_0233_249_0815

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
VMP ®-6A(CA) (0711)                    Page 8 of 15        Initials: _____

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01
VMP ®-6A(CA) (0711)     Page 9 of 15     Initials _TK_

q03312359019 0233 249 0915

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
u03312359019  0233  249  1015

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ®-6A(CA) (0711)                                        Page 10 of 15          Initials: _____

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01
VMP ® -6A(CA) (0711)    Page 11 of 15    Initials:

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

q03312359039 0233 249 1215
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®-6A(CA) (0717.01)
Page 12 of 15
Initials:
Form 3005 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0715)                                Page 15 of 15                Initials: _____

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



Theya Kanagaratnam    05/24/2013 (Seal)
Theya Kanagaratnam     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

_____ (Seal)
     -Borrower

403312159019 0233 249 1415

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3005 1/01
VMP ®-6A(CA) (0711)            Page 14 of 15

**State of California**
**County of** Alameda

} ss.

On          May 24, 2013          before me, Steven Posin, notary public, personally appeared

Theya Kanaganathan, a single woman

NDG

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Steven Posin          (Seal)

STEVEN POSIN
Commission # 2011463
Notary Public - California
San Francisco County
My Comm. Expires Mar 11, 2017



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3005  1/01
VMP ®-6A(CA) (0711)                    Page 15 of 15          Initials: TK



# EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 023-0413-036

Land Situated in the City of Oakland in the County of Alameda in the State of CA

PARCEL ONE:

AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.

PARCEL TWO:

UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL THREE:

AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

PARCEL FOUR:

AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.

Commonly known as: 2316 Lakeshore Ave Apt 16, Oakland, CA 94606



# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    24th   day of      May, 2013    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
Quicken Loans Inc.

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

2316 Lakeshore Ave Apt 16
Oakland, CA 94606
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as: La Ke Shore View

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**   2626734906
Form 3140 1/01
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page 1 of 3      Initials: TK

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

31 UX
918(d)(1,2)
4XcTR
(11.53228

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®-8R (0810)                     Page 2 of 3        Initials: TK      Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Theya Kanagaratnam_ 06/24/2011 (Seal)
Theya Kanagaratnam          -Borrower

N D6

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

**MULTISTATE CONDOMINIUM RIDER** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
VMP ®-8R (0810)                    Page 3 of 3                    Form 3140 1/01

# USPS Tracking®

**Tracking Number:**

**Remove ✕**

## 70222410000036314322

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 10:47 am on February 20, 2024 in MINNEAPOLIS, MN 55402.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**
MINNEAPOLIS, MN 55402
February 20, 2024, 10:47 am

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

---

**Text & Email Updates**                                          ⌄

**USPS Tracking Plus®**                                           ⌄

**Product Information**                                           ⌄

**See Less ⌃**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

| FAQs |
| --- |

# USPS Tracking®

FAQs ›

**Tracking Number:**

**Remove ✕**

**70222410000036314339**

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:11 pm on February 16, 2024 in COPPELL, TX 75019.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

COPPELL, TX 75019
February 16, 2024, 12:11 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

Text & Email Updates                                          ⌄

USPS Tracking Plus®                                           ⌄

Product Information                                           ⌄

**See Less ⌃**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

Case: 24-40209    Doc# 27-3    Filed: 05/20/24    Entered: 05/20/24 10:13:32    Page 59 of 98

# USPS Tracking®

FAQs >

**Tracking Number:**

**70222410000036314346**

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

Remove ✕

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:10 pm on February 15, 2024 in IRVINE, CA 92614.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**
IRVINE, CA 92614
February 15, 2024, 12:10 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

Text & Email Updates                                          ⌄

USPS Tracking Plus®                                           ⌄

Product Information                                           ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

FROM:
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:
US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4377
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CC:
SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4421
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CC:
MTC FINANCIAL INC, DBA TRUSTEE CORPS
c/o Rande Johnsen, CFO
17100 Gillette Ave
Irvine, CA 92614
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
7022 0410 0001 1888 9027
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DATE: February 27, 2023

## RE:  NON-NEGOTIABLE NOTICE OF RESCISSION FOR CAUSE

IN REPLY TO: ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN#
100039033123590196, Date 05/24/2013

NOTICE TO AGENT IS NOTICE TO PRINCIPAL
NOTICE TO PRINCIPAL IS NOTICE TO AGENT

APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)

Page 1

PRESENTED IN GOOD FAITH
UCC § 1-201(20), § 1-202, § 1-203

FRCP Rule 36 "Request for Admission"
Silence is Acquiescence

······················································
**TAKE NOTICE:** I, theya: kanagartnam, a sentient moral being, **Rescission** the original **2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 10003903123590196, Date 05/24/2013** including every copy, bearing my signature, wet ink or electronic, THEYA KANAGARATNAM, or by any derivatives, for cause.

I willingly, knowingly, voluntarily, intentionally and intelligently perform this act and deed.

I made a **mistake** Creating, Signing, and Presenting the original **2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 10003903123590196, Date 05/24/2013**

There was **no Full Disclosure** that was easily understandable by a normal person.

The bank/lender never disclosed to me that I had an option to either **ACCEPT** OR Pay their Presentment. That I could use an accord and satisfaction to settle and discharge the loan with my own Promissory Note or Bond.

The bank/lender did not fully disclose the source of the credit was my minor account at 31 CFR § 363.6.

The bank/lender made it appear as if they were loaning me their own money.

The bank/lender never signed the Note.

The bank/lender is engaged in restraint of trade by restricting access to my [trust] credit, in violation of 15 USC § 1, and conspiracy to commit offense and defraud the United States, in violation of 18 USC § 371 and then claiming that I have to pay the bank/lender back for extending me my own credit.

The bank/lender did not disclose the REMIC and CUSIP for the Note and did not provide me with the IRS 1099 OID as required by IRS Publication 1212, 938, 550 to file with my taxes for the Tax Class 5 Gift and Estate Class forms. I believe they may have filed the 1099 A and embezzled the property. I never abandoned the property and never received a refund.

The bank/lender did not adjust the account, setoff/offset, and discharge the Public Charges using the exemption in accordance with Public Policy. The bank is concealing the liabilities and off-balance sheet ledger where I am the Creditor, Beneficiary, and equity title owner.

I signed the contract as a **minor** in the nature of 31 CFR § 363.6 and therefore lacked the knowledge and contractual capacity to enter into any valid contracts in regard to accessing the credit in my minor account.

Page 2

Therefore, I now repent of my sins.

**Proverbs 6:1-5:** *"My son, if thou be surety for thy friend, if thou hast stricken thy hand with a stranger, 2 Thou art snared with the words of thy mouth, thou art taken with the words of thy mouth.3 Do this now, my son, and deliver thyself, when thou art come into the hand of thy friend; go, humble thyself, and make sure thy friend. 4 Give not sleep to thine eyes, nor slumber to thine eyelids. 5 Deliver thyself as a roe from the hand of the hunter, and as a bird from the hand of the fowler"*

**Proverbs 11:15:** *"He that is surety for a stranger shall smart for it: and he that hateth suretiship is sure."*

See Attachment

1. **2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013**

Date: 02/27/2024

By: _____

Theya Kanagaratnam, living woman
(Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party in Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

Page 3

# NOTE

May 24, 2013
[Date]

Oakland
[City]

CA
[State]

2316 Lakeshore Ave Apt 16
Oakland, CA 94606
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $304,200.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Quicken Loans, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       3.990%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1st      day of each month beginning on      July 1, 2013      I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      June 1, 2043      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 6577, Carol Stream, Il  60197

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,450.55

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
2626734663

Form 3200 1/01
VMP5N (1302).00
Page 1 of 3

Initials: TK

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GVF-5
Bankers Klower Financial Services

Form 3200 1/01
VMP5N.03200/00
Page 2 of 3

_TK_

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Theya Kanagaratnam_____ 05/24/2013 (Seal)     _____(Seal)
Theya Kanagaratnam                         -Borrower                                          -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                          -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                          -Borrower

_____(Seal)     _____(Seal)
                                -Borrower                                          -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3200 1/01
VMP ®                                                                                                           VMP5N(0800).02
Wolters Kluwer Financial Services                                                                            Page 3 of 3

[watermark: CANCELLED / POSSESSED]

*OR YOUR RECORDS*

Recording Requested By:
SELENE FINANCE LP, as attorney in
fact for U.S. Bank Trust National
Association, not in its individual
capacity but solely as owner trustee for
RCF 2 Acquisition Trust c/o U.S. Bank
Trust National Association
And When Recorded Mail To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA 92602

_____[Space Above This Line For Recording Data]_____

Loan No.: 2005026956
MIN: 100039033123590196

35857
Investor Loan No: 2117913

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 13th day of September, 2022, between THEYA KANAGARATNAM, A SINGLE WOMAN ("Borrower"), SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated May 24, 2013 and in the amount of $304,200.00 and recorded on June 19, 2013 in Book, Volume, or Liber No. _____, at Page _____ (or as Instrument No. 2013215140) , of the Official (Name of Records) Records of ALAMEDA, CALIFORNIA (County and State, or other Jurisdiction) and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606
[Property Address]

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument          MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.                                    Page 1 of 7    Modified for California 23707CA 04/08 Rev. 04/15 Rev. 04/21
                                                                              ©2008-2021, The Compliance Source, Inc.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of October 1, 2022, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $289,820.29, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.990%, from October 1, 2022. Borrower promises to make monthly payments of principal and interest of U.S. $1,209.47, beginning on the 1st day of November, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.990% will remain in effect until principal and interest are paid in full. If on October 1, 2062 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including; and

    b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument          MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.                    Page 2 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2000-2021, The Compliance Source, Inc.

b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Beneficiary of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.

MERS Modified Form 3179 1/01 (Rev. 4/14)
Page 3 of 7 Modified for California 23100CA 01/04 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower - THEYA KANAGARATNAM                     Date: 10 / 06 / 2022

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __CA__ §
County of __Alameda__ §

On __10/6/22__ before me __Julian Walls__, Notary Public personally appeared THEYA KANAGARATNAM who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

```
JULIAN WALLS
Notary Public - California
Contra Costa County
Commission # 2377467
My Comm. Expires Oct 5, 2025
```

Notary Public

Printed Name __Julian Walls__

(Seal)                                My Commission Expires: __10/5/25__



ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association

By: _____          _____          OCT 1 1 2022
    Tonya Higginbotham                            -Lender        Date of Lender's Signature
    Assistant Vice President

ACKNOWLEDGMENT

State of ___Florida___
                                    §
County of ___Duval___               §
                                    §

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization this ___OCT 1 1 2022___ by ___Tonya Higginbotham___, Assistant Vice President of SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, a Delaware limited partnership, on behalf of the limited partnership. He/she is personally known to me or who has produced _____ as identification.

_____
Signature of Person Taking Acknowledgment
              Margo A Wise

_____
Name Typed, Printed or Stamped
              Notary
_____
Title or Rank

Serial Number, if any: _____

(Seal)                              My Commission Expires: _____

Notary Public State of Florida
Margo A Wise
My Commission GG 364378
Expires 09/03/2023

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument          MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.          Page 5 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
                                              ©2008-2021, The Compliance Source, Inc.



**MERS**

Tonya Higginbotham

Assistant Secretary

Mortgage Electronic Registration Systems, Inc., as nominee for SELENE FINANCE LP, as
attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely
as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, its
successors and assigns

## ACKNOWLEDGMENT

State of ___Florida___ §
§
County of ___Duval___ §

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online
notarization this ___OCT 11 2022___ by ___Tonya Higginbotham___,
Assistant Secretary of Mortgage Electronic Registration Systems, Inc, as nominee for
SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual
capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, its
successors and assigns, a Delaware corporation, on behalf of the corporation. He/she is personally known to me or
who has produced _____ as identification.

___Margo A Wise___
Signature of Person Taking Acknowledgment

Margo A Wise
Name Typed, Printed or Stamped

Title and Rank

Serial Number, if any: _____

(Seal)

My Commission Expires: _____

Notary Public State of Florida
Margo A Wise
My Commission GG 364376
Expires 08/09/2023

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument — MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc. — Page 6 of 7 — Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.



EXHIBIT A

BORROWER(S): THEVA KANAGARATNAM, A SINGLE WOMAN

LOAN NUMBER: 2005026956

LEGAL DESCRIPTION:

STATE OF CALIFORNIA, COUNTY OF ALAMEDA, AND DESCRIBED AS FOLLOWS:

TAX ID NUMBER(S): 023-0415-036   LAND SITUATED IN THE CITY OF OAKLAND IN THE COUNTY
OF ALAMEDA IN THE STATE OF CA  PARCEL ONE:  AN UNDIVIDED 4.2% INTEREST AS TENANT
IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 5, OF MAPS,
ALAMEDA COUNTY RECORDS.  EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND
UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS
EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO
TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED
APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.  ALSO EXCEPTING THEREFROM,
EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM
PLAN REFERRED TO IN PARCEL ONE.  PARCEL TWO:  UNIT 16, BUILDING 2316, AS SHOWN ON
SAID CONDOMINIUM PLAN.  PARCEL THREE:  AN EXCLUSIVE EASEMENT TO USE PARKING
AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  PARCEL FOUR:  AN
EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID
CONDOMINIUM PLAN.  COMMONLY KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA
94606

Parcel ID Number: 023-0415-036-00
ALSO KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606



FROM:
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:
US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
*****************************************
CERTIFED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4377
*****************************************

CC:
SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
*****************************************
CERTIFED MAIL RESTRICTED DELIVERY
7022 2410 0000 3631 4421
*****************************************

CC:
MTC FINANCIAL INC, DBA TRUSTEE CORPS
c/o Rande Johnsen, CFO
17100 Gillette Ave
Irvine, CA 92614
*****************************************
CERTIFED MAIL RESTRICTED DELIVERY
7022 0410 0001 1888 9027
*****************************************

DATE: February 27, 2024

RE: **NON-NEGOTIABLE NOTICE OF ACCEPTANCE**

**IN REPLY TO: ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013**

```
          NOTICE TO AGENT IS NOTICE TO PRINCIPAL
          NOTICE TO PRINCIPAL IS NOTICE TO AGENT

          APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

          ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
          UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)
```

Page 1

PRESENTED IN GOOD FAITH
UCC § 1-201(20), § 1-202, § 1-203


FRCP Rule 36 "Request for Admission"
Silence is Acquiescence


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TAKE NOTICE:** I, theya: kanagaratnam, a sentient moral being, Accept your presentment: **ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013** and return your offer herein attached to you.

I indicate my **acceptance** of your offer by my signature and date.

- I do not argue the facts, jurisdiction, law, or venue.

- I request that you adjust and setoff all Public Charges by the exemption in accord with Public Policy.

- I request discharge.

- If a coupon/voucher was supplied, the accepted value shall mean the entire amount of the obligation (not a partial payment). The account shall be setoff, settled, and closed.

- If a Promissory Note or Bond is tendered to you, I again, request that you adjust the account, setoff, and discharge the liabilities, close the account, and return any amount in excess of the balance due to me.

Please respond within **five (5) days** from the date you receive this **NON-NEGOTIABLE NOTICE OF ACCEPTANCE.** Dishonor may result if you fail to respond and comply.

See Attachment **ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013**

Sincerely,

Date: 02/27/2024

By: _Theya K_
Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

Page 2

# NOTE

| May 24, 2013 | Oakland | CA |
|---|---|---|
| [Date] | [City] | [State] |

2316 Lakeshore Ave Apt. 16
Oakland, CA 94606
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $304,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.990%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2013. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2043, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 6577, Carol Stream, IL 60197 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,450.55.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
2626734583

Form 3200 1/01
VMP6N (0805).00
Page 1 of 3

Initials: TK

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-5
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (0304).00
Page 2 of 3

*TK*

[Illegible watermark text across document]

**18. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED



_____ (Seal)        _____ (Seal)
Theva Kirugavalu                              -Borrower
Theva Kshagaratnam
-Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                      -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (0909).00
Page 3 of 3

Recording Requested By:
SELENE FINANCE LP, as attorney in
fact for U.S. Bank Trust National
Association, not in its individual
capacity but solely as owner trustee for
RCF 2 Acquisition Trust c/o U.S. Bank
Trust National Association
And When Recorded Mail To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA 92602

---

*[Space Above This Line For Recording Data]*

Loan No.: 2006026956

MIN: 100030033123590196

35857

Investor Loan No: 2117913

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 13th day of September, 2022, between THEYA KANAGARATNAM, A SINGLE WOMAN ("Borrower"), SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS") ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated May 24, 2013 and in the amount of $384,200.00 and recorded on June 19, 2013 in Book, Volume, or Liber No. _____, at Page __ (or as Instrument No. 2013215140) , of the Official (Name of Records) Records of ALAMEDA,CALIFORNIA (County and State, or other Jurisdiction) and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606
*[Property Address]*

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.

MERS Modified Form 3179 8/01 (Rev. 3/14)
Page 1 of 7 Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of October 1, 2022, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $289,820.29, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.990%, from October 1, 2022. Borrower promises to make monthly payments of principal and interest of U.S. $1,209.47, beginning on the 1st day of November, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.990% will remain in effect until principal and interest are paid in full. If on October 1, 2062 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including; and

   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

*23703CA 0566*

b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐

g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the (Beneficiary) of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Case: 24-40209    Doc# 27-3    Filed: 05/20/24    Entered: 05/20/24 10:13:32    Page 81 of 98

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower - THEYA KANAGARATNAM

Date: 10 /06/2022

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___C A___

County of ___Alameda___

On ___10/6/22___ before me ___Julian Walls___, Notary Public personally appeared THEYA KANAGARATNAM who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> JULIAN WALLS
> Notary Public - California
> Contra Costa County
> Commission # 2317467
> My Comm. Expires Oct 5, 2025

Notary Public

Printed Name ___Julian Walls___

(Seal)

My Commission Expires: ___10/5/25___

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument
The Compliance Source, Inc.

MERS Modified Form 3179 1/01 (Rev. 4/14)
Page 4 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.

Case: 24-40209   Doc# 27-3   Filed: 05/20/24   Entered: 05/20/24 10:13:32   Page 82 of 98

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE

SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association

By: _____

Tonya Higginbotham
Assistant Vice President

-Lender    OCT 2 3 2022
Date of Lender's Signature

## ACKNOWLEDGMENT

State of ___Florida___

County of ___Duval___

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization this _OCT 1 3 2022_ by ___Tonya Higginbotham___ Assistant Vice President _____ of SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, a Delaware limited partnership, on behalf of the limited partnership. He/she is personally known to me or who has produced _____ as identification.

Notary Public State of Florida
Margo A Wise
My Commission GG 364376
Expires 08/05/2023

Signature of Person Taking Acknowledgment
Margo A Wise

Name Typed, Printed or Stamped
Notary

Title or Rank

Serial Number, if any:

(Seal)                     My Commission Expires:

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument    MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.    Page 5 of 7    Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
©2008-2021, The Compliance Source, Inc.



MERS                                                 Tonya Higginbotham

                                                Assistant Secretary

Mortgage Electronic Registration Systems, Inc., as nominee for SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, its successors and assigns

## ACKNOWLEDGMENT

State of   Florida                                    §

                                                   §

County of   Duval                                          §

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization this OCT 12 2022 by Tonya Higginbotham Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as nominee for SELENE FINANCE LP, as attorney in fact for U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust c/o U.S. Bank Trust National Association, its successors and assigns, a Delaware corporation, on behalf of the corporation. He/she is personally known to me or who has produced _____ as identification.

                                    Signature of Person Taking Acknowledgment

                                    Margo A Wise

                                    Name Typed, Printed or Stamped

Notary Public State of Florida
Margo A Wise
My Commission GG 364376
Expires 08/08/2023

                                    Title and Rank

                                    Serial Number, if any: _____

(Seal)                                   My Commission Expires: _____

MERS Phone: 1-888-679-6377

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument      MERS Modified Form 3179 3/01 (Rev. 4/14)
The Compliance Source, Inc.                           Page 6 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
                                                          ©2008-2021, The Compliance Source, Inc.

*2 0 5 0 2 8 9 5 6 *

EXHIBIT A

BORROWER(S): THEVA KANAGARATNAM, A SINGLE WOMAN

LOAN NUMBER: 1005026956

LEGAL DESCRIPTION:

STATE OF CALIFORNIA, COUNTY OF ALAMEDA, AND DESCRIBED AS FOLLOWS:

TAX ID NUMBER(S): 023-9415-036  LAND SITUATED IN THE CITY OF OAKLAND IN THE COUNTY OF ALAMEDA IN THE STATE OF CA  PARCEL ONE:  AN UNDIVIDED 4.2% INTEREST AS TENANT IN COMMON IN AND TO TRACT 4135, FILED APRIL 2, 1979, IN BOOK 110, PAGE 3 OF MAPS, ALAMEDA COUNTY RECORDS.  EXCEPTING THEREFROM, UNIT 1 TO 16, BUILDING 2316 AND UNITS 1 TO 6, BUILDING 2324, AS SHOWN ON THE CONDOMINIUM PLAN ATTACHED AS EXHIBIT D TO THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS TO TRACT MAP 4135, REFERRED TO IN PARCEL ONE, A CONDOMINIUM PROJECT, RECORDED APRIL 4, 1979, SERIES NO. 79-062227, OFFICIAL RECORDS.  ALSO EXCEPTING THEREFROM, EASEMENTS FOR PARKING AREAS AND STORAGE AREAS AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE.  PARCEL TWO:  UNIT 16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  PARCEL THREE:  AN EXCLUSIVE EASEMENT TO USE PARKING AREA NO. P-6, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  PARCEL FOUR:  AN EXCLUSIVE EASEMENT TO USE STORAGE SPACE NO. S-16, BUILDING 2316, AS SHOWN ON SAID CONDOMINIUM PLAN.  COMMONLY KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606

Parcel ID Number: 023-0415-036-00
ALSO KNOWN AS: 2316 LAKESHORE AVE APT 16, OAKLAND, CA 94606

MERS Phone: 1-888-679-6377
Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument          MERS Modified Form 3179 1/01 (Rev. 4/14)
The Compliance Source, Inc.                    Page 7 of 7   Modified for California 23702CA 04/08 Rev. 04/15 Rev. 04/21
                                                          ©2008-2021, The Compliance Source, Inc.

# GRANT OF LIMITED POWER OF ATTORNEY IN FACT

I, theya: kanagaratnam, Principal, Secured Party, Lender, Beneficiary, Holder In Due Course, and Bailor in relation to THEYA KANAGARATNAM for the minor account at 31 CFR § 363.6 [TDA Account Number: 218193695] hereby grant limited Power of Attorney to John Stern, CFO, U.S Bank and Robert Lay CFO, Selene Finance LP to perform in fiduciary capacity the following duties:

1. The grant of limited authority to the Attorney-In-Fact, in accordance with US Constitution Article 1, Section 10, Clause 1 and California Constitution Article 1, Section 9 "Right to private contract", does not itself require or permit the exercise of the power. The exercise by the Attorney-In-Fact is subject to the Attorney-In-Fact's fiduciary duties.

2. You agree to be held liable under UCC § 1-103, UCC § 1-201, UCC § 2-202 and UCC § 3-307 "Notice of Breach of Fiduciary Duty". You are not required to be bonded. However, if you are bonded, the bond shall substitute for your personal liability. That upon any Notice of breach, you shall surrender your bond. That you agree that that the Trust may file a UCC-1 lien against your bond until such time that a private non-judicial remedy and settlement is approved or the Bond pays the award. That if your bond does not cover the damages, you agree to be held personally liable for the difference. That if you are not bonded, a UCC-1 lien shall be made against your personal bank accounts and property until such time that a private non-judicial remedy and settlement is approved.

3. You agree that the law form jurisdiction is the Uniform Commercial Code. That equity principles and practices apply.

4. You agree to comply with all applicable statutes and codes relating to money, negotiable, and secured instruments. You do not argue law, jurisdiction, or venue.

5. That you agree to sign all documents using: "theya: kanagaratnam, Principal by <Your Name>, Attorney-In-Fact without prejudice, without recourse" such that the Trustee and/or Beneficiary of the Trust are not personally liable for any damages.

6. The authority to grant limited Power of Attorney to any agent to carry out the same duties. Said agent shall notice the Trust in writing that they agree that they are acting in fiduciary capacity and have agreed to the terms and conditions of this Grant.

7. To contract on behalf of the Trust with any government agency, bank, or fiscal agent of the US Treasury Department to settle the account in full. That at the termination of this Grant you shall notice the agencies that the contracts are terminated. That you shall provide the trust with all the original contracts and their notices.

8. You shall provide a full accrual GAAP accounting and all documents filed or recorded on behalf of the Trust.

9. You shall provide a copy of all IRS documents, including, but not limited to 1099 A, 1099 OID, 1099 MISC, 1096, 1041, etc. for tax reporting purpose.

10. You shall disclose the Trustee and all REMIC's, Tranche's, and CDO's and their CUSIP's.

11. You shall provide a copy of the MoneyNet Daily Transfer Log used to transfer the credit and/or any documents used to redeem the securities to settle the account in full.

12. You may access the Trust's minor account, at 31 CFR § 363.6, to perform a "pull" using the TT&L banking terminal, 31 CFR § 200 series, or to perform redemption, to adjust the account, setoff, settle, and discharge the Public Charges by the exemption in accordance with Public Policy or any securities held in the account.

13. Or in the alternative, you may transfer and convey the Note [not the real property] to the United States Treasury Department, in accordance with 31 USC § 3113, to be used to redeem the Note and reduce the national debt on the condition that the obligation be cancelled and retired and not reissued by another "pull" from the minor account or by redemption of the securities to settle the account in full.

14. You shall file all documents with the local County Recorder's Office or the US Secretary of the Interior to issue a Land Patent and remove any liens or encumbrances that would impose an obligation to pay property taxes by the Trust. See UCC 3-305. You are authorized to use the funds from the minor account or its securities to settle and discharge all liens and encumbrances.

15. You shall order the release of all liens and return the property to the Trust.

16. You shall order the removal of all negative reporting to the credit agencies.

17. If any Trustee fails or refuses to perform, you shall remove the Trustee and replace them with a Trustee of my choice.

18. You agree to indemnify and defend the Trust, at your own cost, for any court proceedings to enforce the Grant by your failure to follow any laws, policies, or procedures.

19. This limited Power of Attorney may not:

    a. Create, modify, or revoke the Trust.
    b. Amend or terminate any UCC-1 filing.
    c. Fund yourself with any principal or interest from the Trust.
    d. Make or revoke a gift of the property in trust or otherwise, with the exception as stated herein for the subject matter of the Note.
    e. Exercise the right to make a disclaimer on behalf of the Trust, This does not limit the Attorney-In-Fact's authority to disclaim a detrimental transfer to the Trust.
    f. Create or change survivor interests in the Trust property in which the Trust may have an interest.
    g. Override any of the terms and conditions of the Trust contract.
    h. Override the authority or directions of the Trustee, Trust Protector, or Board of Trustees.
    i. Designate or change the designation of any Beneficiary to receive any property, benefits, or contract rights.
    j. Make a loan to the attorney-in-fact.
    k. Make, publish, declare, amend, or revoke my will.

20. If it is not expressed herein, it is not implied that you have any general right to act and must obtain specific approval for your actions.

21. That upon the Notice that the contract has been fulfilled to the satisfaction of the Trust, this Grant automatically terminates and is no longer in force or effect. At such time you shall return this Grant to me.

By: _____    Date: 02/27/2024

theya: kanagaratnam, Principal
Without Prejudice, Without Prejudice
dba THEYA KANAGARATNAM

## AFFIDAVIT OF TRUTH

"Indeed, no more than (Affidavits) is necessary to make a prima facie case."
United States v Kis, 658 F2d, 526, 536 (7th Cir. 1981; Cert. Denied,
50 U.S.L.W. 2169; S. Ct. March 22, 1982)

That I, Theya Kanagaratnam Trust©™, a living breathing Female, being duly sworn, depose and say and declare by my signature that the following facts are true, correct, and complete to the best of my knowledge and belief.

That the Affiant is a flesh and blood Female and is a Secured Party Creditor in a collective capacity with other Secured Party Creditors.

That, the Affiant's rights "… existed by law of the land antecedent to the organization of the State." (Hale v Henkel, 201 U.S. 43)

That, the Affiant's rights exist even in the light of the U.S. Bankruptcy' aka **THE National Emergency** and that **includes the right of redemption**.

That, Affiant is "of the people" and is above the corporate government called State of CALIFORNIA/UNITED STATES OF AMERCIA", operating in a **de-facto-bankrupt capacity/status.**

That, Affiant filed a U.C.C. Financing Statement (UCC-1) U.C.C. **20212079883** with various amendments **to perfect a Security interest to initiate redemption as a matter of right.**

That, the Affiant caused to be filed a Security Interest and Lien upon the property of the DEBTOR and in the DEBTOR's, name filed first in line and first in time, over and above the State of CALIFORNIA/UNITED STATES OF AMERICA and that all **property is exempt from levy.**

That the STATE OF CALIFORNIA/UNITED STATES OF AMERCIA, cannot show nor provide a superior interest in said property, and/or Instruments upon the Security Agreement held by the Affiant (See for reference: Wynehamer v. People, 13 NY 378 (1856)).

That, the Affiant/Secured Party is flesh and blood and the corporate fiction/DEBTOR/: THEYA KANAGARATNAM TRUST Ens Legis as appearing upon any UCC filing is "artificial" and was created in the contemplation of law (commerce) AS THE TWO ARE NOT THE SAME, FOR ONE IS REAL, THE OTHER IS A FICTION.

That, and discrimination, or injury cause by the STATE OF CALIFORNIA/UNITED STATES OF AMERCIA and/or Agent(s) to recognize the distinct entities, the real one and the other "artificial" agrees to such injuries and to the **associated damages as established by the Affiant and the State, by and through its Agents by said agreement, is estopped from defense or rebuttal in the matter and AGREES that the Affiant may proceed by Tort for Damages.**

That, this Affidavit, if not rebutted point-for-point by any agent, representing **the State of CALIFORNIA/UNITED STATES OF AMERICA**, at any level, **in any matter,** within (15) days upon receipt, **then these facts stand as True in both the private and the public record… AS TRUE.**

NOTE: Maxim of Law; 1; In Commerce-Truth is Sovereign. 2; For a matter to be resolved it must be expressed. 3; Point of Law; Silence equates to agreement.

Furth Affiant Sayeth Not.

By:/s/ theya: kanagaratnam
Theya Kanagaratnam
Trust Authorized Representative
Attorney-In-Fact
On Behalf of THEYA KANAGARATNAM TRUST©™, Ens Legis

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

# 70222410000036314377

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 10:19 am on March 7, 2024 in MINNEAPOLIS, MN 55402.

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

## Delivered
**Delivered, Left with Individual**
MINNEAPOLIS, MN 55402
March 7, 2024, 10:19 am

**See All Tracking History**

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

See More ⌄

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# USPS Tracking®

**Remove** ✕

Tracking Number:

## 70222410000036314421

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:22 pm on March 5, 2024 in COPPELL, TX 75019.

**Get More Out of USPS Tracking:**

     USPS Tracking Plus®

### Delivered

**Delivered, Front Desk/Reception/Mail Room**

COPPELL, TX 75019
March 5, 2024, 12:22 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)

See More ⌄

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**ALERT: SEVERE WEATHER IN THE SOUTH, SOUTHEAST, CENTRAL AND MIDWEST MAY IMPA...**

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

## 70220410000118889027

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 11:05 am on March 6, 2024 in IRVINE, CA 92614.

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

## Delivered
**Delivered, Front Desk/Reception/Mail Room**

IRVINE, CA 92614
March 6, 2024, 11:05 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

See More ⌄

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FROM:

THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:

US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
**********************************
REGISTERED MAIL RESTRICTED DELIVERY
RE 214 643 297 US
**********************************

CC:

SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
**********************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6067 06
**********************************


MTC FINANCIAL INC, DBA TRUSTEE CORPS
c/o Rande Johnsen, CFO
17100 Gillette Ave
Irvine, CA 92614
**********************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6067 13
**********************************


U.S. TREASURY DEPARTMENT
c/o Janet Yellen, Trustee
1500 Pennsylvania Avenue NW
Washington, DC 20003
**********************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6067 20
**********************************

Page 1

DATE: April 4, 2024

RE: **NON-NEGOTIABLE NOTICE OF FAULT AND OPPORTUNITY TO CURE**

IN REPLY TO: ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013

NOTICE TO AGENT IS NOTICE TO PRINCIPAL
NOTICE TO PRINCIPAL IS NOTICE TO AGENT

APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)

PRESENTED IN GOOD FAITH
UCC § 1-201(20), § 1-202, § 1-203

FRCP Rule 36 "Request for Admission"
Silence is Acquiescence

Page 2

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Greetings,

I hope this **NON-NEGOTIABLE NOTICE OF FAULT AND OPPORTUNITY TO CURE** finds you in sound health and good stead.

I previously wrote and mailed you my **NON-NEGOTIABLE NOTICE OF CONDTIONAL ACCEPTANCE** (Hereinafter "Notice") via USPS Certified Mail Restricted Delivery.

Tracking Number:

SELENE FINANCE LP:  7022 2410 0000 3631 4339 - Delivered Feb. 16, 2024
U.S. Bank:  7022 2410 0000 3631 4322 - Delivered Feb. 20, 2024
MTC FINANCIAL INC., DBA TRUSTEE CORPS:   7022 2410 0000 3631 4346 - Delivered Feb 15, 2024

In my Notice I requested answers to questions. However, I have not received your response. As a result, you are in a status of **fault**.

Due to your fault and according to the TERMS AND CONDITIONS of my Notice (contract), you have agreed to accept a Promissory Note or Bond to settle and close this commercial matter. You have also agreed that no further balance is owed and that this commercial matter is settled and closed.

However, if it was not your intention to fault, I am granting you an opportunity to cure your fault by providing you with an additional **ten (10) days** to respond and answer the questions in my Notice.

Should you fail to respond in writing within ten (10) day of the date of this NON-NEGOTIABLE NOTICE OF FAULT AND OPPORTUNITY TO CURE, I will assume that the accounting for this commercial matter is settled and closed in accord with 48 CFR Ch. 1 § 53.228, 41 CFR § 105-55.030, 26 USC § 6325, and UCC §§ 3-305, 306.

If you continue to try to collect after tender of payment, UCC §§ 3-601, 3-602, 3-603 (discharge), 15 USC §§ 1, 2, 18 USC § 372, and 18 USC § 2073 may apply for wilful and negligent noncompliance in violation of the FDCA; 15 USC § 1692g, e(2A) and FCRA 15 USC § 1681a,n,o, which may be a crime. You appear as a fiscal agent of the U.S. Treasury Department, 12 USC § 266, and are required by law to pay and perform by law. See also Department of Agriculture Rural Development Rural Housing Service v Kirtz, U.S. S.Ct. February 8, 2024, No 22-846. It appears that you have **waived sovereign immunity** in regard to my right to setoff and discharge.

> The Fair Credit Reporting Act of 1970, as amended by the Consumer Credit Reporting Reform Act of 1996, **allows consumers to sue lenders who wilfully or negligently supply false information about them to entities that generate credit reports.** Respondent Reginald Kirtz secured a loan from division of the United States Department of Agriculture and later sued the agency for money damages under the FCRA. Kirtz alleged that the USDA falsely told TransUnion - **a credit reporting agency**- that his account was past due, **thus damaging his credit score and his ability to secure loans at affordable rates.** The USDA moved to dismiss, invoking sovereign immunity. The District Court sided with the USDA. The Third Circuit Court reversed, **holding that 15 USC §§ 1681,n and 1681o authorize suits for damages against "any person" who violates the FCRA, and § 1681a expressly defines "person"**

to include "any" government agency. 46 F. 4th 159, 164-166.
Held: A consumer may sue a federal agency for defying the FCRA's terms.
Pp 4-20.

Attached: GSA Bond Deposit (SF 24, 25, 25A, 28, 1418, 273, 274, 275, OF 91, 1040v)

Sincerely,

Date: 4/4/2024

By: _Theya Kag_

Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party in Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

FROM:
THEYA KANAGARATNAM
On the county at large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:
US BANK
c/o John Stern, CEO
800 Nicollet Mall
Minneapolis, MN 55402-7014
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
REGISTERED MAIL RESTRICTED DELIVERY
RE 214 643 297 US
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO:
U.S. TREASURY DEPARTMENT
c/o Janet Yellen, Trustee
1500 Pennsylvania Avenue, NW
Washington, DC 20220
--------------------------------------------
CERTIFIED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6067 20
============================================


April 4, 2024

RE:     CERTIFIED DEPOSIT ORDER
        Authorized Setoff from TDA Pre-paid Exemption Account No.:
            A28-935-476/218193695; CUSIP: 09258N315
        Transmitting Utility: THEYA KANAGARATNAM TRUST
        Accepted Quote/Invoice ID: 2005026956, 000128-00000-000002-000256
        2067701 4595LT01_1, MIN# 100039033123590196, Date 05/24/2013,
        $304,200.00

Dear Mr. Stern and Mrs. Yellen,

Please be advised that the Secured Party has Accepted for Value and I am now
the Holder-In-Due-Course of any/all documents of my property. Please process
the tender to US BANK using the supplied discharge bond.


Note: US BANK is a fiscal agent of the U.S. Treasury Department in accord
with 12 USC § 266. US BANK has a habit, custom, and practice of dishonoring
and ignoring settlement of funds deposited to settle liabilities in violation
of Title 15 USC § 1. This action of nonfeasance constitutes a crime. Either
the International Bond Market in the U.K. and/or the Depository Trust
Company, 55 Water Street, New York, New York, has been made to perform
discharge through the United Kingdom bond filing desk.

This discharge letter is the drawee's demand order to deposit to the U.S.
Treasury (bank) the copy of the discharged bonds in accord with Title 48

C.F.R. Ch.1, 53.228, for the pre-paid exemption account No. 218193695, and charge the same to:

THE UNITED STATES DEPARTMENT OF THE TREASURY
c/o Janet Yellen, Secretary of the Treasury
1500 Pennsylvania Avenue, Northwest
Washington, DC [20220]

The copy annexed hereto is certified to be a true and correct copy of the original offer. Please complete the enclosed voucher accordingly and settle all obligations which currently appear on the account.

As a general reminder GSA is responsible to perform the accounting and discharge the debt from the TDA bank account in accord with 41 CFR § 105-55-030. You have all the information for the Trust in these instructions. Please return a Time Stamp confirmation by mail or email to me with any tracking information and/or log file for the transfer of funds so I may perform my accounting and communicate directly with the vendor to release the property.

Lastly, if you believe that you "cannot find the account", please check with underwriting as they have a TT&L Terminal, 31 CFR § 200 series, and can pull a soft credit check to approve the setoff and discharge by the Trust's unlimited credit in the nature of The Fair Credit Reporting Act; 15 USC § 1681a, n, o; "person – "any" government agency [see 12 USC § 266]", "civil liability for willful noncompliance", and/or "negligent noncompliance" respectfully. If you have any questions please contact me.

Thank you kindly for your service.

Sincerely,

Date: 4/4/2024

By: Theya Ka

Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM