Theya Kanagaratnam, living woman
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave. #16
Oakland, California [94606]
e-mail: theyak101@yahoo.com

FILED

JUN 1 4 2024

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

THEYA PRAKASHINI KANAGARATNAM

Debtor

Case No: 24-40209

**MOTION FOR REQUEST FOR ADMISSIONS BY NEGATIVE AVERMENT AFFIDAVIT RESPONSIVE TO WRITINGS OF ALLEGED CREDITORS US BANK AND CITIBANK**

Judge: William J. Lafferty

_____/

Good Morning Your Honor:

1, I, Theya Kanagaratnam, am the Secured Party Creditor, and Holder In Due Course and am appearing Specially and not generally on behalf of the ESTATE also known as THEYA PRAKASHINI KANAGARATNAM. I am not the Debtor for the named ESTATE. Herein after Petitioner.

2. Below is a REQUEST FOR ADMISSIONS BY NEGATIVE AVERMENT AFFIDAVIT RESPONSIVE TO WRITINGS OF ALLEGED CREDITORS US BANK AND CITIBANK (herein after ALLEGED CREDITORS).

3. I demand that the ALLEGED CREDITORS US BANK and CITIBANK Point-for-Point answer to this AFFIDAVIT  Until and Unless the ALLEGED CREDITORS US BANK AND CITIBANK Answer to this AFFIDAVIT, THEY CANNOT BE CREDITORS; THEY HAVE NO CLAIM AND THERE IS NO DEBT OR LIEN AND THESE ALLEGED CREDITORS HAVE NO STANDING TO FORECLOSE ON MY PROPERTY LOCATED AT 2316 Lakeshore Avenue, #16, Oakland, CA 94606 and that THESE ALLEGED CREDITORS US BANK and CITIBANK each must release and reconvey the title to my property back to me.

1

AN AUTHENTICATED FOREIGN DOCUMENT
HAGUE CONVENTION, 5 October 1961

PUBLIC NOTICE, HONORABLE CLARIFICATIONS

State of California }

} Subscribed, affirmed, and sealed

County of Alameda }

## INTRODUCTION

NOW COMES Aggrieved party with a right to a remedy, Theya Kanagaratnam (U.C.C. § 1-201;(1)(2)(3)(27)(14) (Hereinafter Aggrieved party), Sui Juris, **Secured Party** (U.C.C. § 9-105), NONPERSON (U.C.C. § 1-201(27)), NON-RESIDENT, NON-DEBTOR (28 U.S.C. § 3002(4)), NON-CORPERATED, NON-FICTION, NON-SUBJECT, NONPARTICIANT in any Government programs, a Living flesh and blood Woman standing on the ground. Sovereign, NON-CITIZEN, under **Special Appearance** (Rule 8(E)) not generally, NON-DEFENDANT (U.C.C. § 1-201(14)), **Holder-In-Due-Course** (U.C.C. § 3-302(A)(2)) of all documentation (U.C.C. § 5-102(6)) of the "Entity" Cestui Que Vie trust CORPORATE FICTION: THEYA KANAGARATNAM®, representing the Corporate Fiction. **Under no circumstances** is the Petitioner "Pro Se" as this Complaint is filed under the Holder-In-Due-Couse; Theya Kanagaratnam of the "Cestui Que Vie trust" of THEYA KANAGARATNAM.

Theya Kanagaratnam, challenges the ALLEGED CREDITORS' standing to foreclose on her property and moves this Court to cancel the sale of her property, set off, settle and discharge all liabilities, and release and reconvey title:

1. I, Theya Kanagaratnam, living woman, Affiant, being over 18 years of age, of sound mind, appear in propria persona by **Special appearance** and not generally and state that the following is true and correct to the best of my knowledge and belief under penalty of perjury to place testimonial evidence on the commercial record.

2. Affiant appears from the soil/Land, on the county at Large, alameda, in accord with the premises set forth in Norton v. Shelby County, 118 U.S. 425 (1886), and is not a fiction at law.

3. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that what follows is NOT "nonsensical", "unintelligible", or "word-salad."

4. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that what follows is blackletter law.

   https://www.law.cornell.edu/wex/blackletter_law

5. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that **ALLEGED CREDITORS US BANK AND CITIBANK** are best described as a "predatory lender."

   https://www.law.cornell.edu/wex/predatory_lending

6. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that every single notice sent to **ALLEGED CREDITORS US BANK and CITIBANK** have the **conspicuous** (UCC § 1-201(10), UCC § 1-103) notice:

   **NOTICE TO AGENT IS NOTICE TO PRINCIPAL**

   **NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

   **APPLICABLE TO ALL SUCCESSORS AND ASSIGNS**

   **ACTUAL AND CONSTRUCTIVE LEGAL NOTICE**

   **UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)**

   **PRESENTED IN GOOD FAITH**

   **UCC § 1-201(20), § 1-202, § 1-203**

   **FRCP Rule 36 "Request for Admission"**

   **18 USC § 1001 "False Statements"**

   **Silence is Acquiescence**

And was signed as:

**Theya Kanagaratnam, living woman**
**Beneficiary,**
**Lender,**
**Creditor,**
**Secured Party,**
**Real Party In Interest,**
**Without Prejudice,**
**Without Recourse,**
**d/b/a THEYA KANAGARATNAM**

Therefore, there was overwhelming, obvious notice and knowledge that Theya Kanagaratnam is the Beneficiary, Principal Owner, Secured Party Creditor, and Holder in Due Course for the entire Cestui Que Vie Estate THEYA KANAGARATNAM and that **the minor account, 31 CFR § 363.6 is available for unlimited setoff and discharge.**

7. It does not appear that the bank, banker, Clerk of the Court, Judge, and Bar members in this case do not admit, acknowledge, and stipulate that the Judge (as case trustee) is NOT bonded, but has an Oath of Office to support and defend the United States Constitution (i.e. CSIG Treaty). That the Clerk of the Court has no Oath of Office and is not bonded. That the court claims that it is not required to carry any bonding, underwriting, of bond surety fund for securities, in violation of 15 USC _ and the Securities and Exchange Act. **CITIBANK HELOC CUSIP: 34986P101**. Please provide the court case CUSIP:

_____, which is my property as the Bailor. Otherwise, I will be forced to pay $1500.00 to a broker in order to obtain the CUSIP. See CO SOS UCC-1: **202420228620 where I obtained CUSIP for another Court Case, for my Birth Certificate BankNote Bond etc. Likewise, I also, hereby, ask the ALLEGED CREDITOR US BANK to provide the CUSIP for the NOTE. Otherwise, I will obtain it from a broker and demand that I be reimbursed by the ALLEGED CREDITORS US BANK AND CITIBANK and court at $1500 per CUSIP.** It appears that the Bankruptcy Court of Northern California and its BAR members, as fiscal agents of the U.S. Treasury Department and alleged "common-law trustees" (12 USC § 266 and 50 USC § 4312) are liable for the tort claim for private trespass by stepping through my UCC-1 lien and may be uttering counterfeit obligations or securities in violation of 18 USC § 472 in an attempt to gain presumption of jurisdiction and strip money from the U.S. Treasury Department to sell on the International Bond Market, which may be embezzlement and tax evasion. The **MoneyNet Daily Transfer Log 120** from the CRIS Custodian shall show the source of the court bond and where it was transferred to. This entire transaction should be reported to the F.B.I., U.S. Department of Justice, and the SEC. All orders from this court and judge are therefore void and unenforceable on their face due to fraud by the court itself.

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 7 of 91

8. It does not appear that the bank, banker, Clerk of the Court, Judge, and Bar members in this case do not admit, acknowledge, and stipulate that ALLEGED CREDITORS US BANK AND CITIBANK have failed and refused to state the **remedy** for **discharge** in accord with Public Policy; 31 USC § 5118(d)(1,2) and the CSIG Treaty.

9. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Requirements for Securitization (using MERS) is so complicated and convoluted, that no person appearing in this court can possibly explain it and therefore is not possible to be in full compliance.

10. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in accordance with the "Affidavit of Walker Todd (Federal Reserve Banks of New York and Cleveland)", Case No. 03-047448-CZ CIRCUIT COURT FOR THE COUNTY OF OAKLAND, STATE OF MICHIGAN, that the following is true in accord with the Federal Reserve Act 1913 and can be proven by the production of all the accounting books and forensic investigation by a Special Master and the **MoneyNet Daily Transfer Log 120**:

   a. Banks are required to follow GAAP and FASB, using accrual accounting methods. The entire process is a book entry system. ALLEGED CREDITORS US BANK AND CITIBANK US BANK and CITIBANK have failed to produce the accounting as evidence.

b. The credit is extended from the borrower's minor account at 31 CFR § 363.6.

c. Money (legal tender: UCC § 1-201(24)), is based on "money of account" (credit). The debt can be settled with money of account (credit); UCC § 3-104 or bonds 48 CFR Ch. 1 § 53.228, 18 USC § 8, CSIG Treaty.

d. The bank is not allowed to refuse tender; UCC §§ 3-307, 3-601, 3-602, 3-603 or **discharge** and UCC § 3-305 "defenses and claims in recoupment" applies.

e. The Note never explained what type or the source of the **CREDIT** can be used to repay the obligation. "$" is ambiguous as we currently use book entry fiat currency also known as "legal tender", also based on the CSIG Treaty. See UCC § 1-201(24).

f. The bank did not lend its own funds, credit, or money to Petitioner thereby causing Petitioner to owe the ALLEGED CREDITORS US BANK AND CITIBANK $304,200.00 And $100,000.00 respectively. Petitioner extended her unlimited credit from her minor account at 31 CFR § 363.6. "It is not an unreasonable argument to state that ALLEGED CREDITORS US BANK AND CITIBANK apparently changed the economic substance of the transaction from that contemplated in the credit application form, agreement, note, or other similar instrument(s), that the Petitioner executed thereby

9

changing the costs and risks to the ALLEGED CREDITORS US BANK AND CITIBANK… which creates at least the inference of inequality of obligations on the two sides of the transaction." Said inequality and deceptive nature of the contract renders it void and voidable by the notice of rescission of Petitioner's signature(s), cancellation of the contract, and correction by tender of credit to the bank to settle the account without dishonor in the form of a negotiable instrument or bond based on credit from the original TDA account (31 CFR § 363.6), which is accessible for setoff and discharge of all liabilities.

g. Credit or promissory notes (money of account) becomes money when banks deposit promissory notes with the intent of treating them like deposits of cash; 12 USC § 1813(l)(1). The promissory note, may be treated as a deposit of money.

h. ALLEGED CREDITORS US BANK AND CITIBANK in fact, never lent any of its own pre-existing money, credit, or assets as consideration to purchase the Note or credit agreement from the Petitioner. There is an utter failure of consideration for the loan contract. The consideration was simply that the bank and banker are licensed and bonded to access the minor account to extend the credit of the Petitioner.

i. ALLEGED CREDITORS US BANK AND CITIBANK are trying to use the credit application form or the note to persuade and

10

deceive the Petitioner into believing that the opposite occurred and that the Petitioner was the borrower and not the lender. That there is no remedy to discharge by Public Policy using another form of approved legal tender or in accord with the CSIG Treaty.

j. The bank has not suffered, nor will suffer any financial loss or actual damages. The "loan" was paid in full at closing. ALLEGED CREDITORS US BANK AND CITIBANK may very well have made more money on the tranches that was ever indicated in the loan principal and interest repayment terms. **Exhibit A**

**A bond has been delivered to each of the ALLEGED CREDITORS US BANK AND CITIBANK (39 CFR § 760.1 "Treasury Department regulations; applicability to Postal Service") to settle the liabilities. A payment tendered is a payment paid. Debit is discharged. Petitioner may be owed a refund, ALLEGED CREDITORS US BANK AND CITIBANK have no standing to foreclose on Petitioner's Property.**

**(SEE EVIDENCE OF BONDS FILED WITH THIS COURT ON MAY 20, 2024)**

11. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Petitioner is entitled to all the rights and guarantees by the

Constitution of the State of California and the Constitution of the United States Article IV, § 4 Full Faith and Credit;

a. Section 1: "Full Faith and Credit **SHALL** be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings **SHALL** be proved, and the Effect thereof."

b. Section 2: "The Citizens of each State **SHALL** be entitled to all Privileges and Immunities of Citizens in the several States."

12. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that based on the Federal Rules of Evidence by and through alleged Bar members are attempting to utilize a "Simulated Legal Process" in an Article 1, administrative court for contracts and legal fictions, by proffering records and documents alleging an obligation and debt owing to the bank based on evidence that is nothing more than "hearsay" in an attempt to seize property owned by the Secured Party Creditor and Holder In Due Course Estate. Claiming that Theya Kanagaratnam, living woman is one in the same as the alleged DEBTOR THEYA KANAGARATNAM, in violation of 26 USC § 7701(a)(26), 28 USC § 1331, FRCP Rule 12(b)(1)(2), UCC § 3-302(a)(2), UCC § 3-305, and 18 USC § 2073.

13. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank claims to have made a financial transaction with Petitioner but in actuality only acted as a "transfer agent" for and on behalf of an indispensable undisclosed party, who by operation of law did in fact "extend" credit for the benefit to and on behalf of Petitioner.

14. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank will not suffer irreparable damage as the loan was paid in full at closing by the extension of credit by the Petitioner.

15. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the claim made by the ALLEGED CREDITORS US BANK AND CITIBANK is disingenuous, misleading, deceptive, false, libelous, slanderous, and no factual basis of the claim when the real question is did the bank by and through its agents engage in a predatory loan practice to falsely induce the Petitioner to think that the application of "credit" was coupled with deceptive wording would entitle the bank to assume that the Petitioner was applying for a "ALLEGED loan" when in fact it was an "extension of credit" from the Petitioner's minor account (31 CFR § 363.6), which the internal bank records reflect and supported by the **MoneyNet Daily Transfer Log 120.**

13

16. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the MoneyNet Daily Transfer Log 120 is a reporting method used by the Federal Reserve banks depicting the essential fact elements of the funding process that is essential to understanding the true "source" of the funding by and through the Federal Reserve Banks and depict and evidence that the "source bank" was the applicant's Social Security Number, coupled with the FRAN (Federal Reserve Account Number) red number on the back of the card, by and through the Cestui Que Trust that is the "New Money" based upon 40 Stat. 411 § 7e as established by the United States Congress in 1933.

17. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank did not issue any loan, but in fact utilized the Petitioner's "credit worthiness" to act as a transfer agent falsely claiming and alleging to have "loaned" the ALLEGED CREDITORS US BANK AND CITIBANK's money when in fact the details are the complete opposite and are now attempting to unjustly enrich themselves by and through false and deceptive claims before this honorable court.

18. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Real Party in Interest (Petitioner) was unaware that the bank would

14

and was engaging in false and deceptive trade practices by failing to disclose material facts as fiduciaries for and to the benefit Petitioner by issuing them an over the counter security falsely claiming it to be a loan, when in fact it was an extension of credit by and through the application for the benefit of the Petitioner. The fact is that Petitioner has unlimited credit and therefore **unlimited ability to setoff and discharge any alleged liability by and through the minor account.**

19. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank claiming with an implied right to make a claim when the bank did knowingly, willfully, and intentionally entice and induce the Petitioner to falsely believe that the bank was in the business of making loans when behind the scenes the bank was utilizing through a pattern of practice by application accessing credit using the Social Security Number and credit score to falsely claim to be in the business of a bank when in fact they only act as a transfer agent.

20. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is barred from loaning depositor's money, shareholder's money, or assets all the while showing an active loan on the books in a double-entry bookkeeping process (accrual accounting),

misapplying proceeds from an extension of credit to be shown as a debt owing with an explicit obligation to the bank, falsely claiming before this honorable court that they have or will suffer irreparable damages. The fact is that the bank refuses to provide all accounting records, which is an issue at bar. They are claiming to do cash accounting, by only claiming the existence of accounts receivable records, which violates GAAP and FASB rules.

21. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that falsely claiming by and through fraudulent recording on the public records and in this court is **NOT** evidence, but mere heresay, that this Court should grant relief to Petitioner. Thus, placing the burden of proof on the on the ALLEGED CREDITORS US BANK AND CITIBANK to prove its claim before this court that they in fact made a loan, thus entitling them to relief.

22. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is claiming to have a security interest in the property as listed in the fraudulent recording on the public record when it is further evidenced of a scheme and artifice to defraud the Petitioner by intentionally, knowingly, and willfully filing fake and false documents to further unjustly enrich themselves at the detriment and demise of the Petitioner when the bank is

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 16 of 91

falsely claiming to be a "lender" with a "security interest" filed in the public record, further evidence of the deceptive trade practices and fraud the bank regularly engages in.

23. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank filed a new deceptive and fraudulent conveyance on the public record **AFTER** discharge and **AFTER** Petitioner gave notice of being the Holder In Due Course.

24. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the responsibility of the court is to make sure that parties claiming to have a legal, lawful claim as "creditors" be subject to challenge by the Petitioner, to demand verification **AND** validation in order for the ALLEGED CREDITORS US BANK AND CITIBANK in this court to properly allow all claims that are properly evidenced, supported, agreed upon by the parties, and subject to setoff and discharge by Public Policy.

25. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is attempting to defraud the court by placing into the docket unconfirmed, unsubstantiated, un-authenticated documents, not sworn under oath, in direct contradiction to the Federal Rules of Evidence Rule 901.

26. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank should be subpoenaed to disclose a full forensic audit of the alleged loans to be conducted by a court appointed Special Master in efforts to determine all of the true facts surrounding the over-the-counter security, loan, and extension of credit, subjecting the bank to actually perfect their alleged claim in order for them to demonstrate that they have in fact a "lawful claim."

27. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank failed to join the "indispensable parties" being the IRS, the U.S. Treasury Department, The Federal Reserve, the GSA, the Secretary of the Treasury of Puerto Rico, et. al. pursuant to IRS Code 6903 and FRCP Rule 12(b)(7).

28. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to show evidence of the bond required pursuant to 26 USC § 2032A(e)(11) to be able to maintain any and all claims.

29. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank falsely claims that the mortgage is in arrears when further inquiry will reveal the entire ALLEGED loan was settled by the transfer of funds from the Federal Reserve Bank MoneyNet Daily

18

Transfer Log 120 evidencing the source and destination of the funds. As well as a GSA Bond lodged in this court (UCC § 3-307, 28 USC § 2041, and 48 CFR Ch. 1 § 53.228). Therefore, **the alleged debt has been discharged.** The bank does not have standing to foreclose Petitioner's property.

30. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments are forgeries and presented to be factual correct and complete by and through Bar counsel.

31. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced IRS Forms 2678 and 8655 by and through Bar counsel as required.

32. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced Proof to the Secretary of the Treasury under 26 USC § 6903 for the taxable transaction by and through Bar counsel.

33. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has not produced and presented IRS Forms 1098 and 1065 to reflect the transactions alleged by the bank by and through Bar counsel.

34. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 19 of 91

has not produced IRS Form 1099 OID as required by IRS Publication 1212, 938, 550.

35. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through a bonded and licensed Notary committed fraud by inducing parties to execute known fraudulent, deceptive, and misrepresented documents to be used to reflect an obligation owed to the bank as an ongoing scheme and artifice by and through Bar counsel.

36. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through Bar counsel has proffered, forged and deceptive documents and caused them to be recorded in the public record causing injury, harm, including financial harm by falsely claiming a security interest held as property of the Estate.

37. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to produce the Notary Log for the Notary memorializing and documenting the execution of documents before a Notary Public.

38. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has recklessly endangered the livelihood of the Real Parties in

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 20 of 91

Interest by and through Bar counsel by creating false, deceptive, and misleading documents by and through Bar counsel.

39. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has engaged in tax evasion by and through Bar counsel.

40. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has caused to be filed false and fictitious documents into the public records by and through Bar counsel.

41. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to report the true identity of the ALLEGED CREDITORS US BANK and CITIBANK by and through Bar counsel.

42. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has failed to name all indispensable parties by and through Bar counsel.

43. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank needs to be reported, under 18 USC § 4 "Misprision of Felony" to the Department of Justice Financial Crimes Division and the Tax Inspector General for tax evasion, and the IRS and DOJ for uttering false securities disguised as loans (18 USC §§ 472, 475).

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 21 of 91

44. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to 15 USC § 1692g the "ALLEGED DEBTOR" (a fiction at law), has the rights to validation of the debts in question to determine the true nature of who the actual responsible debtor agency is. Any alleged creditor has to provide the debt verification under pains and penalties of perjury or be subject to 18 USC § 1001 "False statements."

45. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to 15 USC § 1692g(c) "Admission of Liability" The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer. That the bank and banker have failed and refused to respond to the forensic audit and is now estopped from making any claims to the contrary. That the bank agreed to setoff and discharge by adjusting the accounting as well as receiving tender of a negotiable instrument. **Debt is discharged.**

46. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Petitioner has not waived any remedies or rights under Federal Rules of Evidence.

47. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 22 of 91

Petitioner has not waived any remedies or rights under Federal Rules of Procedure.

48. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to Federal Rules of Evidence Rule 401, the Petitioner has not seen any proof or evidence that the bank by and through Bar counsel have produced any evidence that comparts with Rule 401 stating: "Evidence is relevant if:

    a. It has any tendency to make a fact more or less probable than it would be without the evidence; and

    b. The fact is of consequence in determining the action.

49. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that pursuant to Federal Rules of Evidence Rule 103 Ruling of Evidence state in part:

    a. Preserving a Claim of Error. A party may claim an error in a ruling to admit or exclude evidence only if the error affect a substantial right of the party and:

        i. If the ruling admits evidence, a party, on the record:

            1. Timely objects or moves to strike; and

            2. States a specific ground, unless it was apparent from the context; or

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 23 of 91

ii. If the ruling excludes evidence, a party informs the court of its substance by and offer of proof, unless the substance was apparent from the context.

50. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Petitioner's substantive right to move the court with this filing is paramount to identifying all of the documents and circumstances surrounding the alleged transaction proffered by the bank by and through Bar counsel as well as <u>the bank refusing tender</u>, which is **evidence of discharge; UCC § 3-603.**

51. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Petitioner has substantive right to move this court in Petitioner's favor for Summary Judgement.

52. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that based upon information and belief, pursuant to Rule 402 General Admissibility of Relevant Evidence, which is admissible unless any of the following provides otherwise:

   a. The United States Constitution;

   b. A Federal statute;

   c. These rules; or

   d. Other rules prescribed by the Supreme Court.

   **Irrelevant evidence is not admissible.**

53. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Petitioner has a substantive right to move this court with a Motion to Strike the bank's actions and filings due to false, misleading, fraudulent, and deceptive documents by and through Bar counsel for Irrelevant Evidence that is not admissible. That the bank through Bar counsel has knowingly, intentionally, and willfully failed to supply this court with the private administrative process documents served upon them and is concealing this evidence from this court. That the bank was in **Default** and **Dishonor** and **Estoppel** when Bar counsel filed this libelous, bogus, and frivolous demurrer and **discharge** had already occurred.

54. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through Bar counsel has utilized vague and ambiguous language, and false claims in an attempt to sway this court, after being served with notice of the GSA bond lodged in the court waiting for setoff and discharge. Bank by and through Bar counsel are obligated to motion and order the Judge to perform the accounting and adjudicate the claims. Instead, the bank by and through Bar counsel are still pursuing foreclosure in violation of 18 USC § 2073 and UCC §§ 3-305, 3-306. Bar counsel is in violation of FRCP Rule 11 for increasing litigation costs

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 25 of 91

by failing and refusing to order setoff and discharge and therefore is not subject to receiving any type of award of fees and costs.

55. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Petitioner's opposition to **CLAIMS, DEMURRERS AND OTHER FILINGS BY ALLEGED CREDITORS US BANK AND CITIBANK** <u>**other than to setoff, settle, and discharge all liabilities and release the lien**</u> or be held civilly liable in violation of UCC § 3-307, 28 USC § 2041, 48 CFR Ch. 1 § 53.228, 26 USC § 6325, 18 USC § 2073 and the CSIG Treaty.

**EXHIBIT C.**

56. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentment, notes, contracts, pleadings, papers, records, public records and filings, and "Facts not Agreed to" are inadmissible and heresay by and through their Bar counsel.

57. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments, notes, contracts, pleadings, papers, records, filing, public records filings are 'Facts that required legal determination" and are inadmissible, heresay by and through Bar counsel.

Case: 24-40209    Doc# 31    Filed: 06/14/24    Entered: 06/14/24 14:58:26    Page 26 of
91

58. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank presentments, notes, contracts, pleadings, papers, records, filings, public records filing were **NOT** done in good faith, but performed with unclean hands in bad faith and all attempts to Pray to this honorable court are false, malicious, libelous, deceptive, fraud upon the court, a scheme to artifice to defraud the court, money laundering, tax evasion, treason, and sedition.

59. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank by and through Bar counsel have claimed to be providing a true and correct copy of the alleged note that is a forgery, but submitted redacted documents in this instant case further evidence of the nature of dealing in bad faith with unclean hands attempting to persuade this court of their authenticity. That Petitioner has already accepted the only alleged known copy of the note for value and gave notice of being the Holder in Due Course.

60. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they have failed and refused to provide the loan level data and Corporate/Trust Documents to validate the securitization, assignment, creation of trusts under deed of trust, pooling and service agreements, issuance of asset-backed securities and

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 27 of 91

specifically mortgage-backed securities, the entire GAAP accounting, the payment stream (The Debt), and the tranches for the pooled and comingled payments.

61. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they never recorded all the transfers at the county level. Therefore, there is a lack of showing chain of title in the principal-agent relationship and the alleged current agent has no standing to foreclose.

62. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is impossible to determine the exact amounts from any mortgage payment paid out to any specific investor, as this was done AFTER the Petitioner's payments were comingled with other monies.

63. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the loan may show that the payment stream (The Debt) was securitized, however, it was not done properly; and that the REMIC TRUST paid value for the payment stream (The Debt), which was the right to collect future payments for the mortgage loan. The evidence in the Court is that bank was paid by the Petitioner after the bank refused to disclose the trust, the trustee, and the CUSIP, which they themselves provide to the IRS for Publication 1212.

28

64. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Residential mortgage-backed securities, or RMBS, are bonds or notes created by securitization that are backed by residential mortgages or residential real estate loans. The RMBS in this issue at bar is unknown.

65. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that to create residential mortgage-backed securities, or RMBS, institutions sell pools of their loans to a special-purpose vehicle, or SPV, which then sells the loans to a trust. The trust then repackages the loans as interest-bearing securities and issues them. This true sale of the loans to the SPV ensures that the RMBS is treated as bankruptcy-remote from the originator.

66. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that these trust entities are REMIC's in which the IRS describes a (Real Estate Mortgage Investment Conduit) REMIC as an entity formed for the purpose of holding a fixed pool of mortgages secured by interests in real property (IRS Publication 550, Investment Income and Expenses, 2015).

67. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that without

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 29 of 91

these transactions going through the proper parties, valid transactions cannot take place and that would leave the trust without having properly secured assets for the certificate holders.

68. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Trust is not named in any manner on any of the instruments, nor is the CUSIP identified.

69. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note delivered to Petitioner shows no endorsement to the Note, attempting to make the Note payable to anyone. There is no indication of how many people this Note was transferred to or if it was transferred properly in the public records. It is highly improbable that the bank is the only payee/transferee. It appears that Bar counsel is withholding this loan-level data from this Court in a scheme to defraud Petitioner who has repeatedly demanded this data from the bank. The bank intentionally withheld this information to prevent Petitioner from knowing who to send tender to directly for settlement as they can process any deposit of tender in accord with 12 USC § 266 and 31 CFR § 203. The bank as a transfer agent, refused to transfer tender to the bank and banker for settlement, which is the equivalent of refusal of tender and therefore **discharge.**

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 30 of 91

The bank was obligated to inform the bank and banker they refused tender.

70. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Trust and CUSIP is not named in any way on the Note.

71. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that there is no evidence that the Trust ever received any ownership interest in the Note.

72. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that endorsement is mechanically necessary to constitute transfer interest to party not originally named. Entitlement to enforce a Note focuses on the relationship between the maker of the Note and the person enforcing it. Ownership of the Note is a concept that deals with who is entitled to the economic fruits of the Note.

73. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note filed by Bar counsel does not name any Trust or CUSIP in any way to the mortgage.

74. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Bar counsel fraudulently filed records at the country recorder's

office, post cancellation of the contract, setoff, and discharge in an attempt to defraud Petitioner and file false claims in this case at bar. The records filed are not proper Assignment of Mortgage records.

75. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that there is no evidence or indication that the Trust ever acquired ownership rights to the loan, note, mortgage, the debt purportedly "evidenced" thereby, and/or the real property purportedly "secured" thereby.

76. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Trust never acquired rights to the Note and Mortgage, those rights can not be transferred to another party.

77. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the evidence lacks proof, or even a showing of proof, of any proper transfer of the debt obligation (purportedly evidenced by the Note) along with proper transfer of collateral rights in the real property (purportedly evidences by the Mortgage). In fact, there is no evidence that suggests the Note was properly transferred simultaneously with any purported transfer of the beneficial rights in the Mortgage.

78. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Note was highly deceptive and misleading in regard to who or what is the actual DEBTOR. It appears the actual DEBTOR is a fiction at law (Estate/Trust), and not the Trustee, Secured Party Creditor, Principal Owner, and Holder In Due Course for the Estate of THEYA KANAGARATNAM, who has limited liability authority to instruct and move this court to setoff and discharge any liability by and through the exemption of the minor account.

79. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Petitioner performed a forensic audit of the Note and the Mortgage and found series problems that caused Petitioner to give legal notice of canceling the contract by revoking and rescinding her signature for good cause; **mistake.** The bank was sent actual and constructive legal notice to fix the errors or by default be subject to the TERMS AND CONDITIONS of the NON NEGOTIABLE CONDITIONAL ACCEPTANCE. The bank failed and refused to fix the errors and by nihil dicit "they said nothing" chose to adjust the account, setoff, settle, and discharge the liabilities by the exemption in accord with Public Policy and the Petitioner's minor account, and reconvey the property by either the issuance of a new Note or Bond, which are evidenced

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 33 of 91

in this court, or be subject to default in dishonor and estoppel for forced judicial/non-judicial discharge.

80. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the alleged note is securitized, monetized, and pooled in a REMIC Trust.

81. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that by the forensic audit performed under the FDCPA it was identified that the Note was not signed by the bank and was not securitized property by CA statute law. Therefore, the Note is unsecured debt and the alleged Trust/Trustee/Nominee/Bank has no standing to foreclose as they are not listed on the Note and there is an issue at bar for chain of title. That any attempt of correcting the Note from this point forward is proof of fraud in an attempt to gain standing after Theya Kanagaratnam gave legal notice of being the **Holder In Due Course.**

82. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Bar counsel in NOT the custodian of the records as Theya Kanagaratnam is the Holder In Due Course after the bank delivered the only known copy of the Note to Theya Kanagaratnam. That Theya Kanagaratnam accepted the Note and sent notice to

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 34 of 91

the banks of taking possession of the Note as the Holder In Due Course. Therefore, the bank has no standing to sue.

83. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that I have already **accepted** your **presentment** to adjust the account, setoff, settle, and discharge the liabilities by the exemption in accord with Public Policy (31 USC § 5118(d)(1,2)) by and through the minor discharge account and provided a bond (48 CFR Ch. 1 § 53.228, CSIG Treaty) as legal tender to settle the account. That the bank, banker, and Bar members have repeatedly refused tender, which is **dishonor** and **discharge.**

84. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that ALLEGED CREDITORS US BANK AND CITIBANK failed and refused to supply Petitioner with a 1099 OID in accord with IRS Publication 1212, 938, 550, which may be accounting fraud, embezzlement, and tax evasion. That Petitioner is owed a refund.

85. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Petitioner canceled the contract by revoking and rescissioning her signature from the contract for good cause; **mistake.** That rescinding of the contract reset the contract back to the beginning for re-negotiation by accord and satisfaction, UCC § 3-311. That ALLEGED CREDITORS US BANK AND CITIBANK are currently

estopped and cannot deny the cancellation of the contract and rescission as they never signed the adhesion contract, which made it revocable by giving notice, UCC § 3-202.

86. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that ALLEGED CREDITORS US BANK AND CITIBANK are harassing Petitioner for no legitimate business purposes, in violation of FRCP Rule 11, as they are ESTOPPED by nihil dicit "they said nothing." The bank already agreed by the TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE to adjust the account, setoff, settle, and discharge the liabilities in accord with the exemption by Public Policy and GAAP/FASB accounting standards and release the lien. That the bank refuses to bring ALL the accounting books forward; debits and credits, assets and liabilities, and off-balance sheet books for the REMIC/Tranche for inspection.

87. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that ALLEGED CREDITORS US BANK AND CITIBANK has full knowledge that Petitioner gave notice that she cancelled the contract by revoking and rescinding her signature from the contract for cause; **mistake** and **no full disclosure** after a forensic audit uncovered fraud and mistakes in violation of UCC § 1-103(b) and UCC § 3-202. That the contract was/is invalid and void and the

new TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE are now the agreement between the parties and that the bank is in breach, UCC § 3-307 of said TERMS AND CONDITIONS by failing and refusing to adjust the account, setoff, settle, and discharge, and refusal of tender, which they agreed is **discharge.** That they agreed to the TERMS AND CONDITIONS of UCC § 3-305 "defenses and claims of recoupment" and UCC § 3-306 "claims to an instrument" and have no standing to sue or collect after **discharge.**

88. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that **the bank agreed to EQUITY practices only.**

89. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they can process notes and bonds to discharge the alleged commercial paper liability.

90. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they have access to a Treasury Tax and Loan (TT&L) computer portal to process the note and bond previously tendered to discharge the alleged commercial paper liability at issue.

91. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are in **Default in Dishonor** and **Estoppel** in the commercial realm after refusing

to pay or perform in accord with the TERMS AND CONDTIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANNCE.

92. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they never signed the note and did not record it properly in the public records in accord with state statute law. Therefore, the note was not properly securitized. That Theya Kanagaratnam cancelled the contract, revoked and rescinded her signature for cause: **mistake** and therefore, there is no contract between the parties. That the TERMS AND CONDITIONS of the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE are the agreement between the parties. That the alleged Trust/Trustee/Nominee is not registered on the Note and therefore has no standing to sue in this legal relation. There is a lack of chain of title and principal-agent relationship.

93. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam revoked and revested legal and equitable title for all her property, collapsed the Note, and removed the Trustee/Nominee for breach by nonfeasance in violation of 31 USC § 3113. Therefore, the Trustee/Nominee has no standing to foreclose or take any action in this legal relation.

94. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they have refused to

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 38 of 91

adjust the account, setoff, settle, and discharge the liabilities by the exemption in accord with Public Policy.

95. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent of the United States [Treasury]," in accord with Title 12 USC § 266.

96. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent," with a banking license, violating the premises of Title 48 C.F.R. Ch.1, § 53.228, UCC 3-307, and the CISG Treaty.

97. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they are a "fiscal agent," with a banking license, violating the premises of the Discharge Rights associated with the Treasury Direct Account held by the United States Treasury and its International Treaty with the United Kingdom aka The United Nations Convention on Contracts for the International Sale of Goods (CISG).

98. It does not appear that the Bar members involved in this case as well as the bank and banker do not admit, acknowledge, and stipulate that they are liable for presenting a claim previously discharged via both a negotiable instrument and bonds tendered.

99. It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they were previously served bonds for discharging the alleged credit extension at

39

issue before this court via the instrument known as the AON, Affidavit of Notice [of Discharge].

100.    It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they were served the negotiable instrument via USPS Registered Mail Restricted Delivery mail in accord with the TEEMS AND CONDITIONS for the NON NEGOTIABLE NOTICE OF CONDITIONAL ACCEPTANCE.

101.    It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that they were served with a complete private administrative process, UCC § 3-501~505, via USPS Certified mail.

102.    It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that the negotiable instrument was compliant with 12 USC § 412, UCC § 1-201(24), Article 3 of the UCC, and 18 USC § 8. That Theya Kanagaratnam is a private banker in accord with 31 USC § 5312(a)(2)(C) as the Secured Party Creditor.

103.    It does not appear that the bank and banker in this case do not admit, acknowledge, and stipulate that the bonds for discharge are found in the AON and were compliant with the CISG Treaty.

104.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law form that applies herein is found in Admiralty as the subject

Case: 24-40209    Doc# 31    Filed: 06/14/24    Entered: 06/14/24 14:58:26    Page 40 of 91

matter in this case at bar operates in relation to securities and underwriting, see Benedict on Admiralty, Vol. 1, Jurisdiction.

105. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that case law that applies to this case in admiralty is found at page 11, Answer etc., Black Diamond S. S. Corp. v. Robert Stewart & Sons, 336 U.S. 386 (1949).

106. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law regarding discharge is found in Uniform Commercial Code, Article 3, section 307.

107. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Petitioner Theya Kanagaratnam is a Secured Party Creditor, and Principal Owner to the THEYA KANAGARATNAM Estate.

108. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that neither the President, the CFO, nor any other officer of ALLEGED CREDITORS US BANK AND CITIBANK, bank, has ever made an appearance in relation to the subject matter of this case.

109. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank is a fiction at law and requires a living wo/man to appear

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 41 of 91

and complain, and therein, no complaint/clams/filings appear by ALLEGED CREDITORS US BANK AND CITIBANK in this case at Bar.

110.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it appears to Theya Kanagaratnam that all parties associated are "minors," in accord with said definition found at Title 31 CFR § 363.6, whose Estates are held in trust by the "common-law trustee," found at Title 50 USC § 4312.

111.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam is the source of the funds at issue pursuant to Title 15 USC § 1602 (the mortgage application and Note was security used by the LICENSED banker/ALLEGED CREDITORS US BANK AND CITIBANK to access Theya Kanagaratnam's minor account) and the **MoneyNet Daily Transaction Log Report 120**, which is in the possession of the ALLEGED CREDITORS US BANK AND CITIBANK/banker proving source of funds.

112.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam is the original source of the funds for the mortgage Note in the first place.

113.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Kanagaratnam extended credit by and through Petitioner's

Treasury Direct Account, see Title 31 CFR § 363.6, "account" defined. It is illegal for a currency ban. The consideration was the fact that ALLEGED CREDITORS US BANK AND CITIBANK has a license to access my TDA account and to issue said currency on deposit in accord with Title 12 USC § 266. The term "indebted" is a misnomer as ALLEGED CREDITORS US BANK AND CITIBANK is a "licensed" "fiscal agent…", supra, and are not the source of the funds.

114.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "A bank is not the holder in due course upon merely crediting the depositors account." Bankers Trust v. Nagler, 229 NYS 2d 142, 143.

115.     It does not appear that the bank, banker, and BAR members in this case do not admit, acknowledge, and stipulate that they could not produce the original Note and have supplied Petitioner with the only known copy, which was accepted by Petitioner and returned for value to ALLEGED CREDITORS US BANK AND CITIBANK with a new bond to settle and close the account. That Petitioner gave ALLEGED CREDITORS US BANK AND CITIBANK legal notice of being the Holder In Due Course. That no party has come forward with any valid evidence to the contrary.

116.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya

Kanagaratnam tendered "payment"/discharge in the **Affidavit of Notice [of Discharge]** (AON) in accord with Title 48 C.F.R. Ch.1, § 53.228, UCC 3-307 and The United Nations Convention on Contracts for the International Sale of Goods (CISG).

117.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam already resolved the elements demanded by opposing counsel in his filings, which settled the matter.

118.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it appears that bank, banker, and Bar members in this case at bar failed to state a claim upon which relief can be granted.

119.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is illegal for a currency bank to "lend credit."

120.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank has a habit, custom, and practice, of dishonoring payment.

121.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the Bank was previously served with bonds for discharge. The bank has been paid and is refusing legal tender, UCC § 1-201(24), which is **discharge.**

44

122. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam holds all Right, Title, and Interest to the KANAGARATNAM Estate.

123. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that failure of the bank, banker and bar member in this case to process the bonds for discharge is in violation of Consumer Financial Protection Bureau laws found at **Title 12 CFR Part 1006** (Regulation F), **§1006.18 False, deceptive, or misleading representations or means.**

Regulation F implements the Fair Debt Collection Practices Act (FDCPA), prescribing Federal rules governing the activities of debt collectors, as that term is defined in the FDCPA.

(a) In general. A debt collector must not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, including, but not limited to, the conduct described in paragraphs

(b) through (d) of this section.

**(b) False, deceptive, or misleading representations**

(2) A debt collector must not falsely represent:

(i) **The character, amount, or legal status of any debt.**

124. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that they

45

were repeatedly noticed by Petitioner and therefore may be criminally liable for willful and knowing violation of the FCRA in accord with 15 USC § 1611 by intentionally misleading this court in violation of the nature of FRCP Rule 11.

125.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the attorney(s) in this case are in violation of the <u>Annotated Model Rules of Professional Conduct</u>, Rule 1.1 (**competence**), 1.3 (**Diligence**), 3.3(a)(1) (**Candor toward the Tribunal**), 3.4 (**Fairness to Opposing Party and Counsel**), 4.1 (**Truthfulness in Statements to Others**), 4.4 (**Respect with Persons other than Clients**), and 8.4 (**Misconduct**).

126. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that this case presents questions about Discharge Rights associated with the Treasury Direct Account held by the United States Treasury and its International Treaty with the United Kingdom (CISG).

"The United Nations Convention on **C**ontracts for the **I**nternational **S**ale of Goods (CISG) has been recognized as the most successful attempt to unify a broad area of **commercial law** at the **international level**. It has been ratified by most of the world's important trading countries and become a template for the manner in which commercial law treaties are drafted. As of this writing, the CISG has been adopted by eighty-three countries. These nations are referred to as "Contracting States." Every major trading nation except India, South Africa, and the **United Kingdom** has ratified the **CISG**. Cases interpreting it currently number in the low thousands,

Case: 24-40209    Doc# 31    Filed: 06/14/24    Entered: 06/14/24 14:58:26    Page 46 of 91

and more than 135 United States cases have referred to the CISG. With unreported arbitration awards added, this number must be considerably higher. The effect of the CISG within a Contracting State may vary with domestic law. For example, within **the United States**, which **ratified the CISG in 1986** and where it entered into force in 1988, **the CISG is considered a self-executing treaty**. The CISG therefore creates a private right of action in federal court under federal law. The CISG provides the default set of rules that govern contracts for the sale of goods between parties located in different Contracting States, and, in some cases, where only one of the parties is located in a Contracting State. Where applicable the CISG preempts contrary provisions of domestic sales law, such as Article 2 of the Uniform Commercial Code ("UCC") and other state contract law in the United States, and conflicting provisions of the German Civi Code ("BGB") or the French Civil Code."

See The CISG: history, methodology, and construction, Published online by Cambridge University Press: 05 June 2016.

127.  It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in the United States, Bonds and Insurance fall under Special Rules of Admiralty and Maritime Jurisdiction. Therein, Title 48 CFR Ch.1, 53.228 is applicable for discharge in addition to the nature of California Civil Code § 8424, Mechanics Lien Release Bond, or the applicable State Code on using bonds to settle commercial liabilities.

128.  It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in accord with FRCP XIII. SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS, Rule E. Actions in Rem and Quasi in Rem: General Provisions, Rule 5(E)(a)

47

Special Bond, "The various forms of security for the release of a vessel – a 'club' letter of undertaking, letter of credit payable against a sight draft drawn by the Petitioner, or a bond – are interchangeable in admiralty." Overstreet v. Water Vessel Norkong, 706 F.2d. 641, 1987 AMC 818 (5th Cir. 1983). Once security is posted and the vessel released, the lien is extinguished. Folkstone Maritime Ltd. v. CSX Corp., 866 F.2d. 955, 1989 AMC 867 (7th Cir. 1989).

129.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that it is a principal of law that **"A PAYMENT TENDERED IS A PAYMENT PAID."**

**UCC § 3-603. TENDER OF PAYMENT.**
(a)  If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) **If tender of payment of an obligation to pay an instrument is made** to a person entitled to enforce the instrument and the tender is refused, **there is discharge**, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person

entitled to enforce the instrument.

130.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that with admiralty jurisdiction comes the application of substantive admiralty law. Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 25, 20 L.Ed. 90 (1870) states: "Admiralty jurisdiction defines also the place or territory where the law maritime prevails."

"And plainly, we think, [no state's] legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the **general maritime law** or interferes with the proper harmony and uniformity of that law in its international and Interstate relations." [244 U.S. at 215-16, 37 S.Ct. at 528-29] Southern Pacific Company v. Jensen, 244 U.S. 205, 37 S.Ct. 524 (1917).

131.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the law of marine insurance has never been codified in the United States. However, the basic substantive law of marine insurance is federal maritime law, [Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870); DeLovio v. Boit, 7 F.Cas. 418, 1997 AMC 550 (C.C.D.Mass.1815) (No.3776)], and the Supreme Court has stated that United States courts should look to English law for the applicable rules because of the "special reasons for keeping in harmony with the marine insurance laws of England, the great field of this business." [Queen Ins. Co. of America v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 493, 44 S.Ct.

175, 176, 68 L.Ed. 402 (1924)] However, in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court ruled that in the absence of a controlling federal admiralty law principle to guide the resolution of a particular issue, the courts must apply the applicable state law rule.

132. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Wilburn Boat does not change the initial inquiry of the courts in interpreting a policy of marine insurance to determine whether there is an established federal maritime law rule. [Continental Oil Co. v. Bonanza Corp., 677 F.2d 455, 461, 1983 AMC 387 (5th Cir.1982)]

133. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in practice the application of the Wilburn Boat doctrine means that marine insurance in the United States will be dominated by state law rules; most federal courts simply recite the rule and apply state law.

134. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that many (probably most) in the admiralty bar would favor the enactment of a federal marine insurance act such as the British Marine Insurance Act of 1906.

135.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that, whatever the case may be, we are dealing with **British Crown Commercial paper**.

136.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the International Bond Market (IBM) controls. That the proper venue, if this court lacks the necessary authority or machinery, is the U.S. Court of Federal Claims or the Court of International Trade.

137.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bonds tendered to the court are to be processed in the IBM by the GSA and apply to the court charges in question.

138.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the premises of **Black Diamond S. S. Corp. v. Robert Stewart & Sons, 336 U.S. 386 (1949),** apply;

"Admiralty practice is a unique system of substantive law and procedure with which members of this Court are singularly deficient in experience."

"The proceeding is conducted in **two stages**. In **the first** or **preliminary stage** the owner petitions for relief from personal liability, is required either to surrender his interest in the ship and her freight or to stipulate, with adequate bond, to pay into court its value. The statute says, '**Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to \*\*630 the matter in question**

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 51 of 91

**shall cease.' At this point an Important change in the nature of the proceeding occurs.**

**The proceeding continues as a proceeding in rem against either the ship or the fund as the res.** Our rules provide that when petitioner complies with the court's order as to surrender or bond, the court shall issue a monition requiring all persons asserting claims to file the *401 same and may also issue injunction against the further prosecution of suits against either the owner or the vessel. **Rule 51. The court then adjudicates the claims and apportions the available fund among them.** Rule 52. The owner is at liberty to contest his liability or the liability of the vessel 'provided he shall have complied' with the requirements of surrender or deposit as above set forth. Rule 53."

139.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that UCC § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT as well as UCC § 3-306. CLAIMS TO AN INSTRUMENT, would apply to Theya Kanagaratnam.

140.    It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that remedies apply pursuant to Title 41 CFR § 105-55.030 - Discharge of indebtedness; reporting requirements.

(a) Before discharging a delinquent debt (also referred to as a close out of the debt), the General Services Administration (GSA) will take all appropriate steps to collect the debt in accordance with 31 U.S.C. 3711(g), including, as applicable, administrative offset, tax refund offset, Federal salary offset, referral to Treasury, Treasury-designated debt collection centers or private collection contractors, credit bureau reporting, wage garnishment, litigation, and foreclosure. Discharge of indebtedness is distinct from termination or suspension of collection activity and is governed by the Internal Revenue Code. When collection action on a debt is suspended or terminated, the debt remains delinquent and further collection action may be pursued at a later date in accordance

with the standards set forth in this part. **When GSA discharges a debt in full or in part, further collection action is prohibited. Therefore, GSA will make the determination that collection action is no longer warranted before discharging a debt. Before discharging a debt, GSA will terminate debt collection action.**

(b) Section 3711(i), Title 31, United States Code, requires GSA to sell a delinquent non-tax debt upon termination of collection action if the Secretary determines such a sale is in the best interests of the United States. Since the discharge of a debt precludes any further collection action (including the sale of a delinquent debt), GSA may not discharge a debt until the requirements of 31 U.S.C. 3711(i) have been met.

(c) Upon discharge of a debt of more than $600, GSA must report the discharge to the Internal Revenue Service (IRS) in accordance with the requirements of 26 U.S.C. 6050P and 26 CFR 1.6050P-1. GSA may request Treasury or Treasury-designated debt collection centers to file such a discharge report to the IRS on the Agency's behalf.

(d) When discharging a debt, GSA will request the GSA Office of General Counsel to release any liens of record securing the debt.

141.  It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Petitioner submitted a set of bonds to discharge the charges at issue, in trust, before this court, See Affidavit of Notice [of Discharge]. The Clerk of Court can process through its TT&L computer portal.

142.  It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the charges (penal/ty sum) have been discharged and said commercial presentment has been **settled**.

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 53 of 91

143.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that Theya Kanagaratnam should be released from any and all commercial liability.

144.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that **the Clerk of Court, and Judge, have a "known legal duty to grant the relief Petitioner seeks," in said case.**

145.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that once the bonds were tendered bank, banker, and bar members, were estopped from any further action:

**<u>NOTICE OF ESTOPPEL BY BOND, Am Jur 2nd, Vol. 28, ESTOPPEL AND WAIVER, §25. In Bond.</u>** The presentment of the bond meets the estoppel and waiver requirements "In Bond" as "A bond is a formal written instrument, and the recitals therein are frequently held to be operative as an estoppel." Am Jur 2nd, Vol. 28, ESTOPPEL AND WAIVER, §25. In Bond, page 623-625. Therein, the case of **Speake v.United States**, 9 Cranch (U.S.) 28 (1815), addresses the issue of discharging "penal sums" proving that this concept of discharge is very old. Therein, both the **<u>Federal Miller Act</u>** (codified at Title 40 U.S.C.) and the applicable **<u>State "Little Miller Act"</u>** apply as related to the discharging subject matter.

146.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in the U.S. Const., A3, §2, Cl. 1, we have four law forms; common law, equity, admiralty, and maritime.

147.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in 1938 common law and equity were merged to form "civil law."

148.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that in 1966 admiralty and maritime were merged into "civil law," which then allowed admiralty remedies to be applied to the other law forms/jurisdictions and vice versa.

149.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank, banker, and bar member(s) have no excuse for lack of knowledge as they are aware of the quick class on bonding see Handling Surety Performance Bond and Payment Bond Claims, R. James Reynolds, Jr. found at:

https://www.margolisedelstein.com/files/reynolds_-_surety_performance_bond_claims_1.pdf

150.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that after more than 30 days have passed estoppel applies against further claims.

151.   It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that because more than 30 days tolled the bank, banker, and bar

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 55 of 91

member(s) were barred from any further claim in accord with the **doctrine of collateral estoppel**.

152.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the bank, banker, and bar member(s) are aware the law found at Title 27 CFR §72.11, "commercial crimes" defined, Title 26 USC § 6325, Title 28 USC § 2041, and of maintaining fraudulent securities claims in violation of Title 18 USC § 472 "Uttering counterfeit obligations or securities" and 18 USC § 2073 "False entries and reports of moneys or securities". This violation is actionable sounding in tort.

153.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the commercial penalty sum for not acknowledging the discharge and then mail and file frivolous documents/attempt to foreclose result in a charge in accord with Title 18 USC § 2073 "False entries and reports of moneys or securities".

154.     It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that the case of *Department of Agriculture Rural Development Rural Housing Service v. Kirtz* (Docket 22-846), acknowledges lack of sovereign immunity on the part of bank, banker, and Bar member(s):

56

No. 22–846. Argued November 6, 2023—Decided **February 8, 2024**
The **F**air **C**redit **R**eporting **A**ct of 1970, as amended by the **C**onsumer
**C**redit **R**eporting **R**eform **A**ct of 1996, **allows consumers to sue
lenders who willfully or negligently supply false information
about them to entities that generate credit reports.** Respondent
Reginald Kirtz secured a loan from a division of the United
States Department of Agriculture and later sued the agency for
money damages under the FCRA. Kirtz alleged that the USDA
falsely told TransUnion—**a credit reporting agency**—that his
account was past due, **thus damaging his credit score and his
ability to secure loans at affordable rates.** The USDA moved to
dismiss, invoking sovereign immunity. The District Court sided
with the USDA. The Third Circuit reversed, **holding that 15
U.S.C. §§1681n and 1681o authorize suits for damages against
"any person" who violates the FCRA, and §1681a expressly defines
"person" to include "any" government agency. 46 F. 4th 159, 164–
166.**
Held: A consumer may sue a federal agency for defying the
FCRA's terms. Pp. 4–20.

155.   It does not appear that the bank, banker, and Bar members

in this case do not admit, acknowledge, and stipulate that "An

attorney for the ALLEGED CREDITORS US BANK AND CITIBANK cannot

admit evidence into the court. He is either an attorney or a

witness," and, "Statements of counsel in brief or in argument

are not facts before the court." (Trinsey v. Pagliaro D.C.Pa.

1964, 229 F. Supp. 647).

156.   It does not appear that the bank, banker, and Bar members

in this case do not admit, acknowledge, and stipulate that "The

record for judicial review generally has been limited to the

administrative record, so participants who fail to develop

evidence during internal review risk forfeiting the use of that

evidence in  court." Heimshoff v. Hartford Life & Accident

Insurance Co., 187 Led 2d, 571 U.S. ___ (2013). The Note and

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 57 of
91

subsequent recordings supplied by Bar counsel are therefore inadmissible as they have been supplied with intent to defraud Petitioner of a remedy.

157. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that "Indeed, no more than [an affidavit] is necessary to make the prima facie case." Id at 536, U.S. v. Kis, 658 F.2d 526, (7th Cir. 1981). See **EXHIBIT C.**

158. It does not appear that the bank, banker, and Bar members in this case do not admit, acknowledge, and stipulate that that they were repeatedly served with legal notice to perform and refused their fiduciary duty.

<u>CONCLUSION</u>:

I, Theya Kanagaratnam, in my capacity as the Beneficiary, Secured Party Creditor, Holder In Due Course, and Principal Owner of the ESTATE for THEYA KANAGARATNAM **STAND FIRM IN EQUITY** AND **INSTRUCT/MOVE THE CASE TRUSTEE AS THE MASTER IN CHANCERY AND ALL FISCAL AGENTS TO ADJUST THE ACCOUNT, SETOFF, SETTLE, AND DISCHARGE ALL LIABILITIES AND RELEASE THE LIEN ON MY PROPERTY.** <u>**SETTLEMENT TENDER IS PAYMENT PAID. DEBT IS DISCHARGED.**</u>

# <u>RELIEF SOUGHT:</u>

I, Theya Kanagaratnam, living woman, Affiant, Beneficiary, Principal Owner, Secured Party Creditor, and Holder In Due Course

Case: 24-40209    Doc# 31    Filed: 06/14/24    Entered: 06/14/24 14:58:26    Page 58 of 91

of the Cestui Que Vie Estate THEYA KANAGARATNAM being of sound mind, over 18 years of age, hereby state under penalty of perjury, to the best of my knowledge and belief that the above is true and correct in accord with 28 USC 1746(1) to provide and place evidentiary testimony before the commercial record.

Respectfully submitted,

DATED this 14th day of June, 2024

By: _Theya Kanagaratnam_

Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANAGARATNAM

**EXHIBIT A**

**AFFIDAVIT OF WALKDER TODD (FEDERAL RESERVE)**

Note; Emphasis added to this affidavit with Yellow Highlighting!

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

| | |
|---|---|
| BANK ONE, N.A., | Case No. 03-047448-CZ |
| Plaintiff, | Hon. E. Sosnick |
| v. | AFFIDAVIT OF WALKER F. TODD, EXPERT WITNESS FOR DEFENDANTS |
| HARSHAVARDHAN DAVE and PRATIMA DAVE, jointly and severally, | |
| Defendants. | |

| | |
|---|---|
| Harshavardhan Dave and Pratima H. Dave<br>C/o 5128 Echo Road<br>Bloomfield Hills, MI 48302<br>Defendants, *in propria persona* | Michael C. Hammer (P41705)<br>Ryan O. Lawlor (P64693)<br>Dickinson Wright PLLC<br>Attorneys for Bank One, N.A.<br>500 Woodward Avenue, Suite 4000<br>Detroit, Michigan 48226<br>(313) 223-3500 |

Now comes the Affiant, Walker F. Todd, a citizen of the United States and the State of

Ohio over the age of 21 years, and declares as follows, under penalty of perjury:

1. That I am familiar with the Promissory Note and Disbursement Request and

Authorization, dated November 23, 1999, together sometimes referred to in other

documents filed by Defendants in this case as the "alleged agreement" between

Defendants and Plaintiff but called the "Note" in this Affidavit. If called as a witness,

I would testify as stated herein. I make this Affidavit based on my own personal

knowledge of the legal, economic, and historical principles stated herein, except that I

have relied entirely on documents provided to me, including the Note, regarding

1

623

certain facts at issue in this case of which I previously had no direct and personal knowledge. I am making this affidavit based on my experience and expertise as an attorney, economist, research writer, and teacher. I am competent to make the following statements.

## PROFESSIONAL BACKGROUND QUALIFICATIONS

2. My qualifications as an expert witness in monetary and banking instruments are as follows. For 20 years, I worked as an attorney and legal officer for the legal departments of the Federal Reserve Banks of New York and Cleveland. Among other things, I was assigned responsibility for questions involving both novel and routine notes, bonds, bankers' acceptances, securities, and other financial instruments in connection with my work for the Reserve Banks' discount windows and parts of the open market trading desk function in New York. In addition, for nine years, I worked as an economic research officer at the Federal Reserve Bank of Cleveland. I became one of the Federal Reserve System's recognized experts on the legal history of central banking and the pledging of notes, bonds, and other financial instruments at the discount window to enable the Federal Reserve to make advances of credit that became or could become money. I also have read extensively treatises on the legal and financial history of money and banking and have published several articles covering all of the subjects just mentioned. I have served as an expert witness in several trials involving banking practices and monetary instruments. A summary biographical sketch and resume including further details of my work experience, readings, publications, and education will be tendered to Defendants and may be made available to the Court and to Plaintiff's counsel upon request.

## GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

2

624

3. Banks are required to adhere to Generally Accepted Accounting Principles (GAAP).
GAAP follows an accounting convention that lies at the heart of the double-entry
bookkeeping system called the Matching Principle. This principle works as follows:
When a bank accepts bullion, coin, currency, checks, drafts, promissory notes, or any
other similar instruments (hereinafter "instruments") from customers and deposits or
records the instruments as assets, it must record offsetting liabilities that match the
assets that it accepted from customers. The liabilities represent the amounts that the
bank owes the customers, funds accepted from customers. In a fractional reserve
banking system like the United States banking system, most of the funds advanced to
borrowers (assets of the banks) are created by the banks themselves and are not
merely transferred from one set of depositors to another set of borrowers.

## RELEVANCE OF SUBTLE DISTINCTIONS ABOUT TYPES OF MONEY

4. From my study of historical and economic writings on the subject, I conclude that a
common misconception about the nature of money unfortunately has been
perpetuated in the U.S. monetary and banking systems, especially since the 1930s. In
classical economic theory, once economic exchange has moved beyond the barter
stage, there are two types of money: money of *exchange* and money of *account*. For
nearly 300 years in both Europe and the United States, confusion about the
distinctiveness of these two concepts has led to persistent attempts to treat money of
account as the equivalent of money of exchange. In reality, especially in a fractional
reserve banking system, a comparatively small amount of money of exchange (e.g.,
gold, silver, and official currency notes) may support a vastly larger quantity of
business transactions denominated in money of account. The sum of these
transactions is the sum of credit extensions in the economy. With the exception of

3

customary stores of value like gold and silver, the monetary base of the economy largely consists of credit instruments. Against this background, I conclude that the Note, despite some language about "lawful money" explained below, clearly contemplates both disbursement of funds and eventual repayment or settlement in money of account (that is, money of exchange would be welcome but is not required to repay or settle the Note). The factual basis of this conclusion is the reference in the Disbursement Request and Authorization to repayment of $95,905.16 to Michigan National Bank from the proceeds of the Note. That was an exchange of the credit of Bank One (Plaintiff) for credit apparently and previously extended to Defendants by Michigan National Bank. Also, there is no reason to believe that Plaintiff would refuse a substitution of the credit of another bank or banker as complete payment of the Defendants' repayment obligation under the Note. This is a case about exchanges of money of account (credit), not about exchanges of money of exchange (lawful money or even legal tender).

5. Ironically, the Note explicitly refers to repayment in "lawful money of the United States of America" (see "Promise to Pay" clause). Traditionally and legally, Congress defines the phrase "lawful money" for the United States. Lawful money was the form of money of exchange that the federal government (or any state) could be required by statute to receive in payment of taxes or other debts. Traditionally, as defined by Congress, lawful money only included gold, silver, and currency notes redeemable for gold or silver on demand. In a banking law context, lawful money was only those forms of money of exchange (the forms just mentioned, plus U.S. bonds and notes redeemable for gold) that constituted the reserves of a national bank prior to 1913 (date of creation of the Federal Reserve Banks). See, Lawful Money,

4

626

*Webster's New International Dictionary* (2d ed. 1950).    In light of these facts, I conclude that Plaintiff and Defendants exchanged reciprocal credits involving money of account and not money of exchange: no lawful money was or probably ever would be disbursed by either side in the covered transactions.    This conclusion also is consistent with the bookkeeping entries that underlie the loan account in dispute in the present case.  Moreover, it is puzzling why Plaintiff would retain the archaic language, "lawful money of the United States of America," in its otherwise modern-seeming Note.  It is possible that this language is merely a legacy from the pre-1933 era.  Modern credit agreements might include repayment language such as, "The repayment obligation under this agreement shall continue until payment is received *in fully and finally collected funds*," which avoids the entire question of "In what form of money or credit is the repayment obligation due?"

6.  *Legal tender*, a related concept but one that is economically inferior to *lawful money* because it allows payment in instruments that cannot be redeemed for gold or silver on demand, has been the form of money of exchange commonly used in the United States since 1933, when domestic private gold transactions were suspended (until 1974).  Basically, legal tender is whatever the government says that it is.  The most common form of legal tender today is Federal Reserve notes, which by law cannot be redeemed for gold since 1934 or, since 1964, for silver.    *See*, 31 U.S.C. Sections 5103, 5118 (b), and 5119 (a).

Note: I question the statement that fed reserve notes cannot be redeemed for silver since 1964. It was Johnson who declared on 15 Marcy 1967 that after 15 June 1967 that Fed Res Notes would not be exchanged for silver and the practice did stop on 15 June

5

1967 – not 1964. I believe this to be error in the text of the author's affidavit.

7. *Legal tender under the Uniform Commercial Code (U.C.C.)*, Section 1-201 (24) (Official Comment), is a concept that sometimes surfaces in cases of this nature. The referenced Official Comment notes that the definition of *money* is not limited to *legal tender* under the U.C.C. *Money* is defined in Section 1-201 (24) as "a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations." The relevant Official Comment states that "The test adopted is that of sanction of government, whether by authorization before issue or adoption afterward, which recognizes the circulating medium as a part of the official currency of that government. The narrow view that money is limited to legal tender is rejected." Thus, I conclude that the U.C.C. tends to validate the classical theoretical view of money.

HOW BANKS BEGAN TO LEND THEIR OWN CREDIT INSTEAD OF REAL MONEY

8. In my opinion, the best sources of information on the origins and use of credit as money are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the present case, is as follows: As commercial banks and discount houses (private bankers) became established in parts of Europe (especially Great Britain) and North America, by the mid-nineteenth century they commonly made loans to borrowers by extending their own credit to the borrowers or, at the borrowers' direction, to third parties. The typical form of such extensions of credit was drafts or bills of exchange drawn upon themselves (claims on the credit of the drawees) instead of disbursements of bullion,

6

628

coin, or other forms of money. In transactions with third parties, these drafts and bills came to serve most of the ordinary functions of money. The third parties had to determine for themselves whether such "credit money" had value and, if so, how much. The Federal Reserve Act of 1913 was drafted with this model of the commercial economy in mind and provided at least two mechanisms (the discount window and the open-market trading desk) by which certain types of bankers' credits could be exchanged for Federal Reserve credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve eventually became the principal form of monetary reserves of the commercial banking system, especially after the suspension of domestic transactions in gold in 1933. Thus, credit money is not alien to the current official monetary system; it is just rarely used as a device for the creation of Federal Reserve credit that, in turn, in the form of either Federal Reserve notes or banks' deposits at Federal Reserve Banks, functions as money in the current monetary system. In fact, a means by which the Federal Reserve expands the money supply, loosely defined, is to set banks' reserve requirements (currently, usually ten percent of demand liabilities) at levels that would encourage banks to extend new credit to borrowers on their own books that third parties would have to present to the same banks for redemption, thus leading to an expansion of bank-created credit money. In the modern economy, many non-bank providers of credit also extend book credit to their customers without previously setting aside an equivalent amount of monetary reserves (credit card line of credit access checks issued by non-banks are a good example of this type of credit), which also causes an expansion of the aggregate quantity of credit money. The discussion of money taken from Federal Reserve and other modern sources in paragraphs 11 et seq. is consistent with the account of the

7

629

origins of the use of bank credit as money in this paragraph.

## ADVANCES OF BANK CREDIT AS THE EQUIVALENT OF MONEY

9. Plaintiff apparently asserts that the Defendants signed a promise to pay, such as a note(s) or credit application (collectively, the "Note"), in exchange for the Plaintiff's advance of funds, credit, or some type of money to or on behalf of Defendant. However, the bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of Plaintiff's apparent assertions that it lent its funds, credit, or money to or on behalf of Defendants, thereby causing them to owe the Plaintiff $400,000. According to the bookkeeping entries shown or otherwise described to me and application of GAAP, the Defendants allegedly were to tender some form of *money* ("lawful money of the United States of America" is the type of money explicitly called for in the Note), securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money," to repay what the Plaintiff claims was the *money* lent to the Defendants. It is not an unreasonable argument to state that Plaintiff apparently changed the economic substance of the transaction from that contemplated in the credit application form, agreement, note(s), or other similar instrument(s) that the Defendants executed, thereby changing the costs and risks to the Defendants. At most, the Plaintiff extended its own *credit* (money of account), but the Defendants were required to repay in *money* (money of exchange, and *lawful money* at that), which creates at least the inference of inequality of obligations on the two sides of the transaction (*money*, including *lawful money*, is to be exchanged for *bank credit*).

MODERN AUTHORITIES ON MONEY

8

Case: 24-40209   Doc# 31   Filed: 06/14/24   Entered: 06/14/24 14:58:26   Page 68 of 91

630

11. To understand what occurred between Plaintiff and Defendants concerning the alleged loan of *money* or, more accurately, *credit*, it is helpful to review a modern Federal Reserve description of a bank's lending process. *See*, David H. Friedman, MONEY AND BANKING (4th ed. 1984)(apparently already introduced into this case): "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments. . . . When a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan." (Consumer loans are funded similarly.) Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. **This would show that the bank received the customer's signed promise to repay as an *asset*, thus *monetizing* the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank.** The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the *credit* on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer *money*. If Plaintiff's response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S

9

631

BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into an account." But Plaintiff's loan agreement apparently avoids claiming that the bank actually lent the Defendants *money*. They apparently state in the agreement that the Defendants are obligated to repay Plaintiff principal and interest for the "Valuable consideration (money) the bank gave the customer (borrower)." The loan agreement and Note apparently still delete any reference to the bank's receipt of actual cash value from the Defendants and exchange of that receipt for actual cash value that the Plaintiff banker returned.

12. According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money; money does not have to be issued by the government. For example, David H. Friedman, I BET YOU THOUGHT. . . . 9, Federal Reserve Bank of New York (4th ed. 1984)(apparently already introduced into this case), explains that banks create new money by depositing IOUs, promissory notes, offset by bank liabilities called checking account balances. Page 5 says, "Money doesn't have to be intrinsically valuable, be issued by government, or be in any special form. . . ."

13. The publication, Anne Marie L. Gonczy, MODERN MONEY MECHANICS 7-33, Federal Reserve Bank of Chicago (rev. ed. June 1992)(apparently already introduced into this case), contains standard bookkeeping entries demonstrating that *money* ordinarily is recorded as a bank *asset*, while a bank *liability* is evidence of *money* that a bank owes. The bookkeeping entries tend to prove that banks accept cash, checks, drafts, and promissory notes/credit agreements (assets) as *money* deposited to create credit or checkbook money that are bank *liabilities*, which shows that, absent any right of setoff, banks owe *money* to persons who deposit *money*. Cash (money of

10

632

exchange) is money, and credit or promissory notes (money of account) become money when banks deposit promissory notes with the intent of treating them like deposits of cash. *See*, 12 U.S.C. Section 1813 (*l*)(1) (definition of "deposit" under Federal Deposit Insurance Act). The Plaintiff acts in the capacity of a lending or banking institution, and the newly issued credit or money is similar or equivalent to a promissory note, which may be treated as a deposit of money when received by the lending bank    Federal Reserve Bank of Dallas publication MONEY AND BANKING, page 11, explains that when banks grant loans, they create new money   The new money is created because a new "loan becomes a deposit, just like a paycheck does." MODERN MONEY MECHANICS, page 6, says, "What they [banks] do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts." The next sentence on the same page explains that the banks' assets and liabilities increase by the amount of the loans.

## COMMENTARY AND SUMMARY OF ARGUMENT

14  Plaintiff apparently accepted the Defendants' Note and credit application (money of account) in exchange for its own credit (also money of account) and deposited that credit into an account with the Defendants' names on the account, as well as apparently issuing its own credit for $95,905 16 to Michigan National Bank for the account of the Defendants.  One reasonably might argue that the Plaintiff recorded the Note or credit application as a loan (money of account) from the Defendants to the Plaintiff and that the Plaintiff then became the borrower of an equivalent amount of money of account from the Defendants.

15. The Plaintiff in fact never lent any of its own pre-existing money, credit, or assets as consideration to purchase the Note or credit

11

633

**agreement from the Defendants.** (Robertson Notes. I add that when the bank does the forgoing, then in that event, there is an utter *failure of consideration* for the "loan contract".) When the Plaintiff deposited the Defendants' $400,000 of newly issued credit into an account, the Plaintiff created from $360,000 to $400,000 of new money (the nominal principal amount less up to ten percent or $40,000 of reserves that the Federal Reserve would require against a demand deposit of this size). The Plaintiff received $400,000 of credit or money of account from the Defendants as an asset. GAAP ordinarily would require that the Plaintiff record a liability account, crediting the Defendants' deposit account, showing that the Plaintiff owes $400,000 of money to the Defendants, just as if the Defendants were to deposit cash or a payroll check into their account.

16 The following appears to be a disputed fact in this case about which I have insufficient information on which to form a conclusion. I infer that it is alleged that Plaintiff refused to lend the Defendants Plaintiff's own money or assets and recorded a $400,000 loan from the Defendants to the Plaintiff, which arguably was a $400,000 deposit of money of account by the Defendants, and then when the Plaintiff repaid the Defendants by paying its own credit (money of account) in the amount of $400,000 to third-party sellers of goods and services for the account of Defendants, the Defendants were repaid their loan to Plaintiff, and the transaction was complete.

17 I do not have sufficient knowledge of the facts in this case to form a conclusion on the following disputed points: None of the following material facts are disclosed in the credit application or Note or were advertised by Plaintiff to prove that the Defendants are the true lenders and the Plaintiff is the true borrower **The Plaintiff is trying to use the credit application form or the Note to persuade**

12

634

and deceive the Defendants into believing that the opposite occurred and that the Defendants were the borrower and not the lender. The following point is undisputed: The Defendants' loan of their credit to Plaintiff, when issued and paid from their deposit or credit account at Plaintiff, became money in the Federal Reserve System (subject to a reduction of up to ten percent for reserve requirements) as the newly issued credit was paid pursuant to written orders, including checks and wire transfers, to sellers of goods and services for the account of Defendants.

## CONCLUSION

18. Based on the foregoing, Plaintiff is using the Defendant's Note for its own purposes, and it remains to be proven whether Plaintiff has incurred any financial loss or actual damages (I do not have sufficient information to form a conclusion on this point). In any case, the inclusion of the "lawful money" language in the repayment clause of the Note is confusing at best and in fact may be misleading in the context described above.

## AFFIRMATION

19. I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true. I hereby further affirm that the basis of these beliefs is either my own direct knowledge of the legal principles and historical facts involved and with respect to which I hold myself out as an expert or statements made or documents provided to me by third parties whose veracity I reasonably assumed.

Further the Affiant sayeth naught.

At Chagrin Falls, Ohio

13

635

Note is confusing at best and in fact may be misleading in the context described

above.

## AFFIRMATION

19. I hereby affirm that I prepared and have read this Affidavit and that I believe the

foregoing statements in this Affidavit to be true. I hereby further affirm that the basis

of these beliefs is either my own direct knowledge of the legal principles and

historical facts involved and with respect to which I hold myself out as an expert or

statements made or documents provided to me by third parties whose veracity I

reasonably assumed.

Further the Affiant sayeth naught.

At Chagrin Falls, Ohio

December 5, 2003

WALKER F. TODD (Ohio bar no. 0064539)
Expert witness for the Defendants
Walker F. Todd, Attorney at Law
1164 Sheerbrook Drive
Chagrin Falls, Ohio 44022
(440) 338-1169, fax (440) 338-1537
e-mail: westodd@adelphia.net

## NOTARY'S VERIFICATION

At Chagrin Falls, Ohio
December 5, 2003

On this day personally came before me the above-named Affiant, who proved his identity
to me to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and
stated that he did so with full understanding that he was subject to the penalties of perjury.

Notary Public of the State of Ohio

L. A. LECHNER, Notary Public
State of Ohio, Geauga County
My Commission Expires Sept. 6, 2005

636

14



RECEIVED FOR ~~ ~~

STATE OF MICHIGAN

03-047448-CZ

JUDGE EDWARD SOSNICK

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

BANK ONE, N.A.

Plaintiff,

BY_____ Case No. 03-047448-CZ

v.                                                    Hon. Edward Sosnick

HARSHAVARDHAN DAVE and
PRATIMA DAVE, jointly and severally,

Defendants,

---

Michael C. Hammer (P41705)
Ryan O. Lawlor (64693)
Dickinson Wright PLLC
Attorneys for Bank One, N.A.
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500

Harshavardhan Dave and Pratima Dave
Defendants, *in propria persona*
C/O
5128 Echo Rd.
Bloomfield Hills, Michigan 48302

---

## JUDGMENT

This matter comes before the Court upon Bank One, N.A.'s ("Bank One") Notice of Presentment of Judgment; the Court having entered the Opinion and Order Granting Plaintiff's Motion for Summary Disposition on January 8, 2004, and the Court being otherwise fully advised in the premises:

IT IS ORDERED that Judgment is entered in favor of Bank One and against Defendants, jointly and severally, in the sum of Two Hundred Fifty Six Thousand Seven Hundred Sixty Three Dollars and Thirty Five Cents ($256,763.35).

IT IS FURTHER ORDERED that this Judgment resolves the last pending claim and

closes this case.

Dated:_____

_____
Honorable Edward Sosnick

2

DISTRICT 9-134 774078

EXHIBIT B

NOTICE OF INTENT TO FILE TORT

SERVED TO ALL FISCAL AGENTS

(NO RESPONSE FROM ANY FISCAL AGENT)

# NOTICE OF BREACH UCC § 3-307

US BANK - 9589 0710 5270 1005 6113 59 - REC DATE: 05/31/2024

CITIBANK - 9589 0710 5270 1005 6112 12 - REC DATE: 05/31/2024

**FROM:**
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

**TO:**
US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6113 59
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CC:**
SELENE FINANCE
c/o Robert Lay, CFO
3501 Olympus Blvd., Suite 500
Dallas, TX 75019
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6113 66
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CC:**
MTC FINANCIAL INC, DBA TRUSTEE CORPS
c/o Rande Johnsen, CFO
17100 Gillette Ave
Irvine, CA 92614

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6113 73
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DATE:**    May 28, 2024

**RE:**  **NON-NEGOTIABLE NOTICE OF INTENT TO FILE TORT**

IN REPLY TO: ACCOUNT NO.: 2005026956, 000128-00000-000002-000256 2067701
4595LT01_1, MIN# 100039033123590196, Date 05/24/2013


NOTICE TO AGENT IS NOTICE TO PRINCIPAL
NOTICE TO PRINCIPAL IS NOTICE TO AGENT


APPLICABLE TO ALL SUCCESSORS AND ASSIGNS

ACTUAL AND CONSTRUCTIVE LEGAL NOTICE
UCC §§ 1-201(b)(1)(2)(3)(24)(25)(26)(27)

PRESENTED IN GOOD FAITH
UCC § 1-201(20), § 1-202, § 1-203


FRCP Rule 36 "Request for Admission"
18 USC § 1001 "False Statements"
Silence is Acquiescence


UCC § 3-307 "Notice of Breach of Fiduciary Duty"
UCC § 3-603 "Tender of Payment"
**********************************************************************

Greetings,


This "Notice" is being presented to you in the nature of FRCP Rule 36 "Request for Admission" and 18 USC § 1001 "False claims". You never denied or dishonored any of the presentments or tender of payment and failed/refused to provide any proof to the contrary. Therefore, you agreed to estoppel and are barred from making any claims or assertions to the contrary. You continue to fail to state a claim to the court upon which relief can be granted.

Therefore, I am making this final response to your presentment(s) that you continue to send to me via the United States Postal Service, in violation of 18 USC § 1341 "Mail fraud", in terms of why I am no longer obligated to either accept or pay your presentments or to respond to you in any way. At this point in time, you are in violation of 15 USC § 1692e(2A) *"The false representation of the character, amount, or legal status of any debt"* and you are now harassing me for no legitimate business purpose.

If you believe that you have a claim that you want to resolve in an administrative equity court or arbitration, please bear in mind that you already agreed to only perform equity practices and to do the accounting. Please be sure to submit the following evidence to the equity court/arbitrator, which have been served to you, so that you are not subject to the pains and penalties of perjury and/or 18 USC § 1001 "False claims". <u>We have an agreement and you agreed to pay and perform:</u>

1. You already agreed to act as my Attorney in Fact to contact Treasury Direct and have them transfer the funds from my account to setoff and settle the entire balance due. <u>Where is the transfer paperwork and accounting?</u>

2. You already agreed that the equity court/arbitrator shall issue an immediate Summary Judgment and Default Judgment against you and issue a punitive award of triple damages for failing or refusing to pay or perform. In addition, you agreed that, I as the Interpleader, under Dispute of Ownership of Funds, that the 100% of the court's CUSIP Court Registry funds belong to me. That you agreed that no BAR actor may represent you because they are not licensed by the State to practice law. Do you really think the equity magistrate/judge, as the Master in Chancery, is not going to dismiss your case for being bogus or frivolous, especially when he finds out that he's required to adjudicate 100% of the

CRIS funds to me? <u>Are you sure you want to go to an equity court/arbitration or do you want to perform?</u>

3. You already agreed to the Terms and Conditions by my Non-Negotiable Conditional Acceptance, which were served to you by USPS certified mail restricted delivery:

    a. NON-NEGOTIABLE NOTICE OF FORENSIC AUDIT:
       US BANK: 7022 0410 0000 9829 9083 Received: January 05, 2024
       SELENE FINANCE: 7022 0410 0000 9830 3247 Received: January 03, 2024
       MTC FINANCIAL: 7022 2410 0000 3631 4469 Received: January 25, 2024

    b. NON NEGOTIABLE NOTICE OF CONDITONAL ACCEPTANCE:
       US BANK: 7022 2410 0000 3631 4322 Received: February 20, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4339 Received: February 16, 2024
       MTC FINANCIAL: 7022 2410 0000 3631 4346 Received: February 15, 2024

    c. NON NEGOTIABLE NOTICE OF RESCISSION FOR CAUSE:
       US BANK: 7022 2410 0000 3631 4337 Received: March 7, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4421 Received: March 5, 2024
       MTC FINANCIAL: 7022 0410 0001 1888 9027 Received: March 6, 2024

    d. NON NEGOTIABLE NOTICE OF ACCEPTANCE:
       US BANK: 7022 2410 0000 3631 4337 Received: March 7, 2024
       SELENE FINANCE: 7022 2410 0000 3631 4421 Received: March 5, 2024
       MTC FINANCIAL: 7022 0410 0001 1888 9027 Received: March 6, 2024

    e. NON NEGOTIABLE NOTICE OF FAULT AND OPPORTINTY TO CURE:
       US BANK: 9589 0710 5270 1005 6066 45 Received: March 18, 2024
       US BANK: RE 214 643 297 US Received: April 10, 2024
       SELENE FINANCE: 9589 0710 5270 1005 6066 52 Received: March 14, 2024
       SELENE FINANCE: 9589 0710 5270 1005 6067 06 Received: April 09, 2024
       MTC FINANCIAL: 9589 0710 5270 1005 6066 69 Received: March 18, 2024
       MTC FINANCIAL: 9589 0710 5270 1005 6067 13 Received: April 10, 2024

    f. NON NEGOTIABLE NOTICE OF DEFAULT IN DISHONOR AND ESTOPPEL:
       US BANK: RE 214 471 637 US Mailed: May 21, 2024 Received:
       SELENE FINANCE: 9589 0710 5270 1617 5160 59 Received: May 24, 2024
       MTC FINANCIAL: 9589 0710 5270 1617 5160 66 Received: May 24, 2024

4. You already accepted tender and agreed to an accord and satisfaction [UCC § 3-311]. The full amount of the obligation has been settled. According to the agreement you were required to adjust the account, setoff, settle, and discharge the entire amount of the Public Charges by the exemption in accordance with Public Policy, release all the liens and return the Deed and Title back to me. <u>Where is the release of lien, Deed, and/or Title to the property?</u>

5. You already agreed to file the appropriate Land Patent documents with the County Recorder and/or the Secretary of the Interior and pay to remove and liens of encumbrances that make me an obligor to pay property taxes. That

you agreed to file the Quit Claim Deed or Warranty Deed to transfer the the Property to the Irrevocable Trust. <u>Where are the Land Patent recording documents?</u>

6. Then I sent you a Promissory Note/Bond, backed with a CUSIP, which you did not dishonor. Therefore, you accepted tender for the full amount of the obligation and you now owe me a refund. I will remind you, that if you believe that you refused tender, according to the law, there is discharge to the extent of the amount of the tender [UCC § 3-603] and I owe you nothing. <u>Where is the refund or the Promissory Note/Bond that you dishonored?</u>

   a. Registered Mail, Restricted Delivery: RE 214 643 297 US **Received: April 10, 2024**

7. You agreed to remove the acting Trustee for nonfeasance. You agreed to assign me or my agent as the Trustee as the Attorney In Fact, with full power and authority to instruct any agent, trustee, partner, corporate officer or director, or other representative, owing a fiduciary duty with respect to the instrument to pay and perform [UCC § 3-307]. <u>Please explain why you have not paid the creditors, performed the accounting, and released the lien, Deed, and Title back to me to deliver to the Trustee and Beneficiary of the Irrevocable Trust, who is now the legal and equity title owner of the Property?</u>

I'll remind you what's at stake here; 15 USC § 1; Trusts in restraint of trade illegal $100,000,000.00 fine and/or imprisonment and 18 USC § 371 Conspiracy to commit offense or to defraud United States a fine and/or imprisonment. I reserve all rights in law and equity to immediately file the Tort claim against you at the U.S. Court of Federal Claims or the U.S. Court of International Trade as well as to file criminal charges against you with the F.B.I. and the United States Attorney General. My paperwork stands as my commercial Affidavit.

                   Govern yourselves accordingly,

                          Sincerely,

                    Date: 05/28/2024

          By: *Theya Kanagaratnam*
             Theya Kanagaratnam, living woman
                       Beneficiary,
                             Lender,
                            Creditor,
                       Secured Party,
                  Real Party In Interest,
                      Without Prejudice,
                      Without Recourse,
             d/b/a THEYA KANAGARATNAM

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

## 9589071052701005611359

Copy     Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 9:15 am on May 31, 2024 in MINNEAPOLIS, MN 55402.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**
MINNEAPOLIS, MN 55402
May 31, 2024, 9:15 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

See More ⌄

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

```
FROM:
THEYA KANAGARATNAM
On the county at Large, alameda
Non-Domestic
c/o 2316 Lakeshore Ave #16
Oakland, California [94606]

TO:
CITIBANK
c/o Mark Mason, CFO
388 Greenwich St.
New York, NY 10013
**********************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6112 12
**********************************

CC:
CENSLAR FSB
c/o David Schneider, CFO
425 Phillips Blvd.
Ewing, NJ 08618
**********************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6113 97
**********************************
```

DATE:      June 7, 2024

RE:   **NON-NEGOTIABLE NOTICE OF INTENT TO FILE TORT**

IN REPLY TO:     ACCOUNT NO.: 106091318334000, CFU-H-NO-000-WT, 09/27/2006

Greetings,

This "Notice" is being presented to you in the nature of FRCP Rule 36 "Request for Admission" and 18 USC § 1001 "False claims". You never denied or dishonored any of the presentments or tender of payment and failed/refused to provide any proof to the contrary. Therefore, you agreed to estoppel and are barred from making any claims or assertions to the contrary. You continue to fail to state a claim to the court upon which relief can be granted.

Therefore, I am making this final response to your presentment(s) that you continue to send to me via the United States Postal Service, in violation of 18 USC § 1341 "Mail fraud", in terms of why I am no longer obligated to either accept or pay your presentments or to respond to you in any way. At this point in time, you are in violation of FDCPA; 15 USC § 1692e(2A) "*The false representation of the character, amount, or legal status of any debt*" and you are now harassing me for no legitimate business purpose.

If you believe that you have a claim that you want to resolve in an administrative equity court or arbitration, please bear in mind that you already agreed to only perform equity practices and to do the accounting. Please be sure to submit the following evidence to the equity court/arbitrator, which have been served to you, so that you are not subject to the pains and penalties of perjury and/or 18 USC § 1001 "False claims". <u>We have an agreement and you agreed to pay and perform:</u>

1. You already agreed to act as my Attorney in Fact to contact Treasury Direct and have them transfer the funds from my account to setoff and settle the entire balance due. <u>Where is the transfer paperwork and accounting?</u>

2. You already agreed that the equity court/arbitrator shall issue an immediate Summary Judgment and Default Judgment against you and issue a punitive award of triple damages for failing or refusing to pay or perform. In addition, you agreed that, I as the Interpleader, under Dispute of Ownership of Funds, that the 100% of the court's CUSIP Court Registry funds belong to me. That you agreed that no BAR actor may represent you because they are not licensed by the State to practice law. Do you really think the equity magistrate/judge, as the Master in Chancery, is not going to dismiss your case for being bogus or frivolous, especially when he finds out that he's required to adjudicate 100% of the CRIS funds to me? <u>Are you sure you want to go to an equity court/arbitration or do you want to perform?</u>

3. You already agreed to the Terms and Conditions by my Non-Negotiable Conditional Acceptance, which were served to you by USPS certified mail restricted delivery:

   a. NON-NEGOTIABLE NOTICE OF FORENSIC AUDIT:
      CITIBANK: 7022 0410 0000 9830 1397 Received: November 13, 2023
      CENLAR: 7022 0410 0000 9830 1380 Received: November 13, 2023

   b. NON NEGOTIABLE NOTICE OF CONDITONAL ACCEPTANCE:
      CITIBANK: 7022 2410 0000 3631 4452 Received: January 19, 2024
      CENLAR: 7022 2410 0000 3631 4445 Received: January 19, 2024

   c. NON NEGOTIABLE NOTICE OF RESCISSION FOR CAUSE:
      CITIBANK: 7022 2410 0000 3631 4292 Received: February 26, 2024
      CENLAR: 7022 2410 0000 3631 4308 Received: March 7, 2024

   d. NON NEGOTIABLE NOTICE OF ACCEPTANCE:
      CITIBANK: 7022 2410 0000 3631 4292 Received: February 26, 2024
      CENLAR: 7022 2410 0000 3631 4308 Received: March 7, 2024

e. NON NEGOTIABLE NOTICE OF FAULT AND OPPORTNITY TO CURE:
   CITIBANK: 9589 0710 5270 1005 6066 21 Received: March 21, 2024
   CENLAR: 9589 0710 5270 1005 6066 38 Received: March 28, 2024
   And Again:
   CITIBANK: RE 214 456 904 US Received: April 15, 2024
   CENLAR: 9589 0710 5270 1005 6064 30 Received: April 15, 2024


f. NON NEGOTIABLE NOTICE OF DEFAULT IN DISHONOR AND ESTOPPEL:

   CITIBANK: RE 214 456 895 US Received: June 6, 2024
   CENLAR: 9589 0710 5270 1005 6112 05 Mailed: May 30, 2024


4. You already accepted tender and agreed to an accord and satisfaction [UCC § 3-311]. The full amount of the obligation has been settled. According to the agreement you were required to adjust the account, setoff, settle, and discharge the entire amount of the Public Charges by the exemption in accordance with Public Policy, release all the liens and return the Deed and Title back to me. Where is the release of lien, Deed, and/or Title to the property?

5. You already agreed to file the appropriate Land Patent documents with the County Recorder and/or the Secretary of the Interior and pay to remove and liens of encumbrances that make me an obligor to pay property taxes. That you agreed to file the Quit Claim Deed or Warranty Deed to transfer the the Property to the Irrevocable Trust. Where are the Land Patent recording documents?

6. Then I sent you a Promissory Note/Bond, backed with a CUSIP, which you did not dishonor. Therefore, you accepted tender for the full amount of the obligation and you now owe me a refund. I will remind you, that if you believe that you refused tender, according to the law, there is discharge to the extent of the amount of the tender [UCC § 3-603] and I owe you nothing. Where is the refund or the Promissory Note/Bond that you dishonored?


   Registered Mail, Restricted Deliver: : RE 214 456 904 US

7. You agreed to remove the acting Trustee for nonfeasance. You agreed to assign me or my agent as the Trustee as the Attorney In Fact, with full power and authority to instruct any agent, trustee, partner, corporate officer or director, or other representative, owing a fiduciary duty with respect to the instrument to pay and perform [UCC § 3-307]. Please explain why you have not paid the creditors, performed the accounting, and released the lien, Deed, and Title back to me to deliver to the Trustee

<u>and Beneficiary of the Irrevocable Trust, who is now the legal and equity title owner of the Property?</u>

I'll remind you what's at stake here; 15 USC § 1; Trusts in restraint of trade illegal $100,000,000.00 fine and/or imprisonment and 18 USC § 371 Conspiracy to commit offense or to defraud United States a fine and/or imprisonment. I reserve all rights in law and equity to immediately file the Tort claim against you at the U.S. Court of Federal Claims or the U.S. Court of International Trade as well as to file criminal charges against you with the F.B.I. and the United States Attorney General. My paperwork stands as my commercial Affidavit.

Govern yourselves accordingly,

Sincerely,

Date: 06/07/2024

By: _Theya Kangaratnam_
Theya Kangaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANGARATNAM

ALERT: FLOODING AND SEVERE WEATHER IN THE SOUTH, SOUTHEAST, AND CENTRAL U.S. MAY IMPACT DELIVERY....

# USPS Tracking®

Remove ✕

Tracking Number:

## 9589071052701005611212

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:03 pm on June 10, 2024 in NEW YORK, NY 10013.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**

NEW YORK, NY 10013
June 10, 2024, 3:03 pm

See All Tracking History

What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)

See More ⌄

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

EXHIBIT C

AFFIDAVIT OF TRUTH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Case: 24-40209    Doc# 31    Filed: 06/14/24    Entered: 06/14/24 14:58:26    Page 88 of
91

## AFFIDAVIT OF TRUTH

"Indeed, no more than (Affidavits) is necessary to make a prima facie case."
United States v Kis, 658 F2d, 526, 536 (7th Cir. 1981; Cert. Denied,
50 U.S.L.W. 2169; S. Ct. March 22, 1982)

That I, Theya Kanagaratnam Beneficiary, a living breathing Woman, being duly sworn, depose and say and declare by my signature that the following facts are true, correct, and complete to the best of my knowledge and belief.

That the Affiant is a flesh and blood Woman and is a Secured Party Creditor in a collective capacity with other Secured Party creditor.

That, the Affiant's rights "… existed by law of the land antecedent to the organization of the State." (Hale v Henkel, 201 U.S. 43)

That, the Affiant's rights exist even in the light of the U.S. Bankruptcy' aka **THE National Emergency** and that **includes the right of** redemption.

That, Affiant is "of the people" and is above the corporate government called State of CALIFORNIA/UNITED STATES OF AMERCIA", operating in a **de-facto-bankrupt capacity/status.**

That, Affiant filed a U.C.C. Financing Statement (UCC-1) U.C.C. 20242028620 with various amendments **to perfect a Security interest to initiate redemption as a matter of right.**

That, the Affiant caused to be filed a Security Interest and Lien upon the property of the DEBTOR and in the DEBTOR's, name filed first in line and first in time, over and above the State of CALIFORNIA/UNITED STATES OF AMERICA and that all **property is exempt from levy.**

That the STATE OF CALIFORNIA/UNITED STATES OF AMERCIA, cannot show nor provide a superior interest in said property, and/or Instruments upon the Security Agreement held by the Affiant (See for reference: Wynehamer v. People, 13 NY 378 (1856)).

That, the Affiant/Secured Party is flesh and blood and the corporate fiction/DEBTOR/: THEYA KANAGARATNAM TRUST Ens Legis as appearing upon any UCC filing is "artificial" and was created in the contemplation of law (commerce) AS THE TWO ARE NOT THE SAME, FOR ONE IS REAL, THE OTHER IS A FICTION.

That, and discrimination, or injury cause by the STATE OF CALIFORNIA/UNITED STATES OF AMERCIA and/or Agent(s) to recognize the distinct entities, the real one and the other "artificial" agrees to such injuries and to the **associated damages as established by the Affiant and the State, by and through its Agents by said agreement, is estopped from defense or rebuttal in the matter and AGREES that the Affiant may proceed by Tort for Damages.**

That, this Affidavit, if not rebutted point-for-point by any agent, representing **the State of CALIFORNIA/UNITED STATES OF AMERICA,** at any level, **in any matter,** within (15) days upon receipt, **then these facts stand as True in both the private and the public record… AS TRUE.**

NOTE: Maxim of Law; 1; In Commerce-Truth is Sovereign. 2; For a matter to be resolved it must be expressed. 3; Point of Law; Silence equates to agreement.

Furth Affiant Sayeth Not.

By:/s/ theya-kanagaratnam
Theya Kanagaratnam
Trust Authorized Representative
Attorney-In-Fact
On Behalf of THEYA KANAGARATNAM, Ens Legis

64

**Certificate of Service**

The foregoing **REQUEST FOR ADMISSIONS BY NEGATIVE AVERMENT AFFIDAVIT RESPONSIVE TO WRITINGS OF ALLEGED CREDITORS US BANK AND CITIBANK,** was placed into USPS certified mail for service listed hereafter on or about this 14th day of June 2024:

US BANK
c/o John Stern, CFO
800 Nicollet Mall
Minneapolis, MN 55402-7014
*************************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6112 29
*************************************

CITIBANK
c/o Mark Mason, CFO
388 Greenwich St.
New York, NY 10013
*************************************
CERTIFED MAIL RESTRICTED DELIVERY
9589 0710 5270 1005 6112 36
*************************************

DATED this 14th day of June, 2024

By: _Theya Kanagaratnam_
Theya Kanagaratnam, living woman
Beneficiary,
Lender,
Creditor,
Secured Party,
Real Party In Interest,
Without Prejudice,
Without Recourse,
d/b/a THEYA KANGARATNAM